## Vinson v. Southern Bell Tel. & Tel. Co.

### Failure to Deliver Message.

(Decided May 14, 1914. Rehearing denied June 24, 1914.
66 South. 100.)

1. *Telegraphs and Telephones; Obligation of Telephone Company.*—A telephone company maintaining a line and exchanges to afford patrons the means of telephonic communication are required to exercise a degree of care and skill commensurate with its undertakings, and must employ all reasonable means within its control to secure effective and efficient service; but it is not an insurer, and is not liable for a tortuous breach of duty because its service is interfered with or rendered ineffectual by causes beyond its control, not traceable to negligence or intentional misconduct.

2. *Same; Burden of Proof; Negligence.*—The failure of a telephone company maintaining a system to give service at all, or to render effectual or efficient service, is prima facie evidence of negligence of the company or its employees, and to escape liability therefor, the burden is on it to show that the cause was unavoidable by the exercise of due care and diligence, or was the result of acts for which it was not responsible either directly or in consequence of negligent omission to employ due care and skill to discover the effect of such acts, and to remove them after becoming aware thereof.

[Vinson v. Southern Bell Tel. & Tel. Co.]

3. *Same; Jury Question.*—Under the evidence in this case it was for the jury whether the telephone company negligently failed to render service to a patron desiring to communicate with another patron, but unable to do so.

4. *Same; Non-Performance; Damage.*—Where the failure of the phone company to render service to a patron so as to enable him to call a physician to treat an injured child, was the result of negligence of the company, it was at least liable for nominal damages for breach of contract, or for breach of duty arising out of the contract, and such actual damages as the patron suffered in consequence thereof, provided the patron had not previously breached his contract for service.

5. *Same.*—Under the evidence in this case, it was for the jury to determine whether plaintiff sustained physical injury by reason of physical exhaustion in being obliged to walk to the residence of the physician to call him to attend his sick child, because unable to get telephonic connection on account of the negligence of the telephone operator.

6. *Same.*—If a patron of a telephone company sustained physical injuries by being obliged to walk for a physician to attend an injured child, because of his inability to obtain telephonic connection with such physician, he could recover damages for mental distress caused by delay in communicating with the physician, and delay of the physician in arriving to treat the child who died before the arrival of the physician.

7. *Same; Evidence.*—Where the action was to recover damages for failure of the telephone company to render service to a patron desirous of communicating with another patron, evidence that the mechanism and line was serviceable before and after the failure to obtain service, was admissible to show the condition of the line and mechanism at the time.

8. *Same; Issues.*—Where the contention of the telephone company was that the patron suing for breach of contract to render service had himself breached the contract by failure to pay the rental for the month, and the patron replied that the bill for the month was presented according to the custom of the company and paid after the injury complained of the patron was entitled to testify to a conversation had with the company's manager when paying the rental for the month.

9. *Evidence; Admissions; Time.*—Where the action was by a patron against the telephone company for failure to render service, a statement by the company's manager sometime thereafter to show the qualification of the operator in charge at the time was not admissible.

APPEAL from Cullman Circuit Court.

Heard before Hon. D. W. SPEAKE.

Action by J. T. Vinson against the Southern Bell Telephone & Telegraph Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

The following is the complaint:

Count 2: "Plaintiff claims of defendant $1,999 as damages, for that heretofore, on, to wit, July 17, 1911, defendant was engaged in the business of operating a public telephone system, serving the public for hire or reward in the transmission of oral messages by means of telephony, and on the day and date aforesaid. and for a long time prior thereto, plaintiff was a patron of said defendant, and plaintiff had installed in his residence near Cullman, Ala., a telephone for his use and for which it charged him the sum of $1.50 per month, and defendant was under a duty to give plaintiff telephone service with the inhabitants of Cullman, Ala., who had telephones installed in their places of business and places of residence, and to connect plaintiff's said telephone with the telephones of other patrons in Cullman county, when plaintiff called therefor by ringing said central office and requesting that he be connected with such telephone, and on the day and date aforesaid plaintiff's minor son suffering from his said injuries, and in a very critical condition, and in danger of dying, the plaintiff, through his wife as his agent, had arranged with his family physician, who was a patron of defendant, and had a telephone installed in his residence, that if his services were needed to attend plaintiff's said minor son, that he would be called over the telephone during the night, and said physician had agreed to answer said call at once, and thereupon plaintiff, through his agent or servant, informed defendant's agent or servants in said central office in Cullman, Ala., of the condition of his said son, and the arrangements with his said physician; and thereafter, during the evening, the condition of plaintiff's minor son became more critical, and, desiring to call his said physician, he made repeated efforts to secure connection with his said family phy-

sician over the telephone by ringing said central office, and the agents or servants of said defendant in said central office so negligently conducted themselves in and about giving plaintiff said connection that he failed to secure the same, and thereby failed to get in communication with his said family physician, and was forced, in order to procure the services and attendance of said physician, to leave the bedside of his son, and to walk and run all the way from his residence, to wit, about one mile and a half, to the residence of his said family physician, and during plaintiff's absence his son died. Plaintiff was damaged, in that he was required to pay for the services of said telephone, that he had to expend great physical energy and exertion in procuring the presence of said physician by running from his home to the residence of said physician, one mile and a half, that he suffered great mental anguish because of not being able to procure said physician to attend to his son, and in being absent from his son at the time of his death, and that he suffered great physical pain and exhaustion because of having to run for said doctor, as aforesaid, all of which said damages he claims in this case. The plaintiff avers that said damages and injury were caused by reason and as a proximate consequence of the negligence of defendant's agents or servants or employees in and about conducting said telephone business, to plaintiff's damage in the sum aforesaid."

Count 3: Same as count 2, down to and including the following words: "All of which damages he claims in this case"—and adds the following: "Plaintiff avers that his said damages and injuries were caused by reason and as a proximate consequence of the negligence of said defendant in failing to have in the conduct of its said business, reasonably competent and efficient em

ployees in said central office, to plaintiff's damage as aforesaid."

Count 4: "Plaintiff claims of defendant $1,999 as damages, for that heretofore, to wit, on July 17, 1911. defendant was engaged in the business of operating a public telephone system, serving the public for hire or reward in the transmission of oral messages by means of telephony, and on. the day and date aforesaid, and for a long time prior thereto, plaintiff was a patron of said defendant, and plaintiff had installed in his residence near Cullman, Ala., a telephone for his use, and for which it charged him the sum of $1.50 per month and defendant engaged to render plaintiff telephone service by giving connection with all other phones in Cullman, Ala., and to connect plaintiff's said telephone with the telephones of other patrons in Cullman county, when plaintiff called therefor by ringing said central office and requesting that he be connected with such telephone; and on the day and date aforesaid, plaintiff's minor son, one Irving Vinson, was seriously injured, and was lying at plaintiff's home, suffering from his said injuries, and in a very critical condition, and in danger of dying, and plaintiff, through his wife as his agent, had arranged with his family physician, who was a patron of defendant, and had a telephone installed in his residence, that if his services were needed to attend plaintiff's said minor son that he would be called over the telephone during the night, and said physician had agreed to answer said call at once, and thereupon, through his agent or servant, informed defendant's agents or servants in said central office in Cullman, Ala., of the condition of his said son, and the arrangements with his said physician, and thereafter during the evening the condition of plaintiff's minor son became more critical, and, desiring to call his said physi-

cian, he made repeated efforts to secure connection with his said family physician over the telephone by ringing said central office, and the agents or servants of said defendant, in said central office so negligently conducted themselves in and about giving plaintiff said connection that he failed to secure the same, and thereby failed to get in communication with his said family physician, and was forced, in order to procure the service and attendance of said physician, to leave the bedside of his son and to walk and run all the way from his residence, to wit, about one mile and a half, to the residence of his said family physician, and was greatly delayed in securing the services of his said family physician, and during plaintiff's absence his son died; and plaintiff avers that he was damaged, in this: He paid the regular monthly tolls for the use of said phone, that he had to expend great physical energy in going after said doctor, and was greatly exhausted, and suffered great mental anguish on account of not being able to procure said physician, and on account of having to be away from his said son during his last illness. Plaintiff avers that the cause of action herein stated grew out of the same subject-matter and state of facts as set forth in the other counts of the complaint; that plaintiff's injury and damage was caused by reason and as a proximate consequence of the breach of said contract, in that the said servants, agents, or employees of defendant in negligently failing to make proper connection with the phone of said physician."

Plea 4 is as follows: "There was a regular contract in writing between plaintiff and defendant whereby defendant was requested by plaintiff to establish at his residence a metallic circuit telephone station, to maintain the same and wires connecting it with defendant's exchange, and to furnish service to plaintiff; and plain-

tiff agreed to pay for such maintenance, etc., the sum of $1.50 monthly, in advance, from the 1st day of each calendar month; and defendant avers that said contract was breached by plaintiff, in that he did not pay, and had not paid, for such service for the month of July, 1911, on or prior to said July 17, 1911."

The replication to plea 4 that plaintiff was a patron of defendant, and said phone had been established in plaintiff's residence for a long time, to wit, six months, or more, and that it was and had become defendant's custom and practice to present a bill for telephone toll each month, and plaintiff would pay said toll within a reasonable time thereafter; that this custom and practice had continued all during the time said phone had been established in plaintiff's residence; that the bill for the month of July, 1911, was presented according to said custom, and plaintiff paid same after said injury complained of, and said defendant accepted the tolls therefor and allowed said phone to remain in plaintiff's residence, and continued to give service thereon without claiming any breach of said contract on account of the failure to pay said tolls in advance.

BROWN & GRIFFITH, for appellant. As to the care and skill required of telephone companies, see 2 Joyce on Electricity, 1166. The affirmative charge should never be given where there are conflicts in the evidence, or where different reasonable inferences may be drawn.— W. U. T. Co. v. Louissell, 161 Ala. 238. A prima facie case was made out and cast the burden on defendant to show want of negligence.—2 Joyce, 1175; W. U. T. Co. v. Merrill, 39 South. 121; 35 Ind. 427; 9 Am. Rep. 744. The breach of contract was shown and plaintiff was entitled to nominal damages at least.—W. U. T. Co. v Wilson, 93 Ala. 34; Adams v. Robertson, 65 Ala. 586

Plaintiff was entitled to show the condition of the line just previous to and just after the effort to get service. —*So. Ry. v. Forrester,* 158 Ala. 483; *N. C. & St. L. v. Bingham,* 62 South. 113.

GEORGE H. PARKER, and EYSTER & EYSTER, for appellee. Counsel rely upon the following authorities in support of their contention that there was no error in the ruling of the trial court.—*Ashe v. DeRosett,* 72 Am. Dec. 554; 29 Cyc. 490; Black's Law Dictionary; *B. R. L. & P. Co. v. Cochrum,* 60 South. 307; *Lebanon L. & L. Tel. Co. v. Lebanon Lbr. Co.,* 21 L. R. A. 115; *Middleton v. W. U. Tel. Co.,* 62 South. 745; *Ross v. Western Union Tel. Co.,* 81 Fed. 676; *Stafford v. Western Union Tel. Co.,* 73 Fed. 273; *S. W. Tel. & Tel. Co. v. Solomon,* 117 S. W. Rep. 215-216; *Sou. Bell Tel. & Tel. Co. v. Glawson,* 79 S. E. 491; *Western Union Tel. Co. v. Edmundson,* Vol 2, Am. Neg. Rep. 810; *Western Ry. of Alabama v. Mutch, Admr.,* 97 Ala. 196; *Yazoo & M. V. R Co. v. Foster,* 23 South. 582.

McCLELLAN, J.—During the afternoon of July 17, 1911, the plaintiff's (appellant's) 17 year old son was injured about the head by a fall from a bicycle. Dr. Baird, plaintiff's family physician, attended the boy about 4 o'clock in the afternoon, diagnosing his condition to be the result of concussion of the brain. Both Dr. Baird and plaintiff were regular subscribers, whose obligation was to pay monthly, for residence telephones with the defendant company. They had been so for many months, if not longer. The service afforded such subscribers in and about Cullman, Ala., included the maintenance, day and night, of the usual central office in the town, whereby, in response to the mechanically produced fall of a "drop" on the central office switchboard, the attention of the operator would be called

and given the calling phone, and connection thereof with the other phone desired would be effected. If the operator left the switchboard for sleep or refreshment the practice was to so order the switchboard mechanism as to cause the setting off of a bell or gong when the "drop" fell. This arrangement would ordinarily serve the purpose of a persistent and loud alarm.

The successful operation of these processes depend, of course, upon the working condition of the mechanism and wire connection provided, as well as upon appropriate manipulation or action by the person desiring to call another person, by the operative, and by the person intended to be communicated with.

The counts under which the evidence was taken were 2, 3, and 4 as amended. The first two declare as for a breach of duty and are in tort; and the last (4) is for the breach of the contract. The pleas, surviving demurrer, were the general issue numbered 1, and that numbered 4, which, though not addressed to the counts *separately,* asserted the breach by plaintiff of his contract for the service of a phone in his residence by nonpayment by a stipulated date of the rental sum. Plea 2, setting up a failure to present the claim within a particular period was stricken on demurrer. In addition to a general traverse of this plea 4, the plaintiff replied that the custom was, and had long been, to allow payment of the rental by a subscriber by a reasonable time after presentation of an account therefor, and that plaintiff paid, and the company accepted without question, the rental sum for the month averred in plea 4 to have been the occasion of the breach alleged. The special rejoinder to special replication 2 was stricken in response to plaintiff's demurrer. The issues made were those raised by averments of the counts mentioned above, of the plea 4, and of special replication 2.

[Vinson v. Southern Bell Tel. & Tel. Co.]

The court gave the general affirmative charge, on the whole case, for the defendant (appellee.) The scope of the review here, on the plaintiff's appeal, will appear from the opinion.

The report of the appeal will contain counts 2 and 3 and amended count 4.

After careful review of the entire evidence, the opinion prevails that the court erred in giving the general affirmative charge requested by the defendant. There was evidence, or inferences fairly deducible from evidence, that required the jury's solution of every material issue raised by counts 2, 3, and 4 as amended. Manifestly the affirmative charge was not defendant's due on the theory that the issues made by plea 4, the general replication thereto, and the special replication thereto, were incontrovertibly established in the evidence.

It is the duty of telephone companies maintaining lines and exchanges for the purpose of affording patrons the means of telephonic communications to exercise in that public service a character and degree of care and diligence and skill commensurate with their undertaking. All reasonable and proper means and agencies within their control should be employed to secure effective, prompt, and accurate service. The duty exacted comprehends reasonable and proper care, skill, and effort to afford for the service undertaken suitable appliances, instruments, and apparatus, and competent and skilled servants, agents, and operators. And if the appliances, instruments, or apparatus are defective, or if the operatives are incompetent or unskilled, or if there is other negligence in respect of the service undertaken, liability attaches for the loss or damage proximately resulting therefrom to one entitled to proper, prompt, and efficient servive. Such companies are not

insurers; and where the service undertaken is interfered with, or rendered ineffectual by, uncontrollable causes—causes not traceable or ascribable to negligence or intentional misconduct in respect of the duty assumed—such companies are not liable for a tortious breach of duty.—2 Joyce on Elec. Law, § 733.

Where a telephone company installs an instrument through which it undertakes, for a consideration, to afford continuous telephone service, or service during definite parts of the day or night, or service upon application therefor through public stations, and persons authorized to avail of the service pursue the usual method to effect the use of the telephonic system so tendered by the company, and the telephone service so undertaken to be afforded is not given, or is insufficiently or ineffectually afforded, the presumption prima facie is that negligence of the company, or of its servants or employees, is the cause of the failure of the telephone service, or of its inefficiency; and the obligation to rebut the prima facie presumption thereupon passes to the telephone company; which presumption may be rebutted by proof that the cause was of an uncontrollable nature or was unavoidable by the exercise of due care, skill, and diligence, or was the result of acts for which the company was not responsible, either directly or in consequence of its negligent omission to employ due care and skill and diligence to discover the effect of such acts and to remove or repair after becoming aware thereof.

The application of the doctrine to the evidence adduced required the submission of the issues to the jury's determination. The contract between plaintiff and this company for continuous telephone service covering the time in question was shown. There was evidence tending, at least, to show: Repeated efforts to reach the central office by the usual method for that purpose;

through the operation of the instrument in plaintiff's dwelling; that these efforts covered a period from about 10 o'clock to near 11 o'clock, in the evening; that no response was had thereto from the centrol office; that the mechanism in the central office constructed to direct the operator's attention to the call did not make the call, or, if it did so, that the operator took no account thereof, paid no heed as she should have done, thereto; that uncontrollable causes that might have operated to prevent the normal effectiveness of the telephonic mechanism from plaintiff's dwelling to and in the central office did not intervene on this occasion; that a representative of the company in the central office was advised, earlier in the evening of July 17, 1911, of the probable desire or necessity for telephonic communication from plaintiff's dwelling to Dr. Baird, another subscriber and the family physician, in reference to plaintiff's son's condition, which was serious; that the occasion for such communication arose; that, the physician would have responded; that, in consequence of the failure of the telephone service engaged to be afforded plaintiff, there was delay in bringing the physician to the bedside of the son; that, in further consequence, the father, being greatly alarmed at the obviously serious symptoms manifested by the stricken son, went afoot to bring the physician; that the distance from his home to the physician's home was approximately a mile and a half; that he traveled rapidly; that when he arrived at the home of the physician, he was "exhausted"; that he and the physician returned afoot to the bedside of the son; and that when they had reached a point near the plaintiff's home they were advised that the son was dead.

If the failure of the service was found by the jury to have resulted from negligence on the part of the com-

pany, or of its employees, and if the contract for telephone service was not breached, as averred in plea 4, the plaintiff was at least entitled to recover nominal damages for the breach of contract, or for breach of the duty arising out of the contract, for telephonic service, but also such actual damages as he suffered in consequence thereof.

It cannot be affirmed, as a matter of law, that the physical effort expended by plaintiff to secure the physician —an effort that proper telephonic service and communication would have rendered unnecessary—was only a mental disturbance or discomfiture. "Injury to the person" is, we doubt not, synonymous with bodily hurt, bodily harm. Great physical effort may be immediately productive of that character of hurt or harm. If such effort produces physical exhaustion, it is open, at least, to be concluded that bodily harm or hurt has, though not visibly manifested in impaired physique, resulted. Such a draft upon vital organs may produce direct effects hurtful, harmful to the physical man, to the person. It has never been supposed that only permanent injuries were injuries to the person; nor that only visible injuries or injuries susceptible of being discovered or known through any of the five senses of another observing the person alleged to have suffered injury were injuries to the person. The absence of some sort of physical manifestation of injury to the person is, of course, evidence of the absence of such injury; and, in cases where the injury claimed is of the obvious, one way or the other, such evidence is of course conclusive. It was a jury question on the evidence here whether the physical effort expended by plaintiff resulted in injury to his person; and, if so, mental distress suffered in consequence of the delay in communicating with the physician and in consequence of the physician's absence after

he could, and probably would, have arrived at the bed-side before the death of plaintiff's son was, if shown, an element for which damages might be awarded, the rela-tionship between plaintiff and person to be attended by the physician being such as to allow the jury to draw the inference of mental distress on that account (*W. U. Telegraph Co. v. Henderson,* 89 Ala. 510, 7 South. 419, 18 Am. St. Rep. 148) ; provided the testimony tending to show notice to the company's agent or servant of the likelihood that a call for the physician that night would be made over the telephone was credited by the jury.

Any evidence, such as satisfactory use and service-ableness of the mechanism and line of which plaintiff was entitled to be served, during the evening of the son's death and during the next morning, should have been re-ceived as tending to show the condition of the mechan-ism and the line.

If the mechanism and line were in working condition shortly before and after the occasion in question, it was evidence, in connection with the other evidence, to go to the jury upon the issues of neglect by the operative in respect of attention to the service the company had engaged to afford.

Under the issues made by the pleadings, the plaintiff should have been allowed to recite his view of the full conversation with the company's manager (Cassels) when he paid the rental for the month of July; but any statements then made by the manager could not be re-ceived for the purpose of showing the qualification of the operative in charge on the night in question.

The judgment is reversed, and the cause is remanded.
Reversed and remanded.

ANDERSON, C. J., and SAYRE and DE GRAFFENREID, JJ., concur.