Peterson v. Monroe Independent Telephone Co.

OSCAR PETERSON, APPELLANT, V. MONROE INDEPENDENT TELEPHONE COMPANY, APPELLEE.

FILED MAY 6, 1921.   No. 21483.

1. Telegraphs and Telephones: DUTIES OF TELEPHONE COMPANY. Telephone companies are under the duty of furnishing to their subscribers reasonably prompt and efficient service in giving them connections with other subscribers, and they are liable for any pecuniary loss directly traceable to a breach of such duty as the proximate cause.

2. ———: NEGLIGENCE: PETITION: SUFFICIENCY. In an action to recover for the loss of horses alleged to have died for want of medical treatment prevented by the negligent failure of a telephone company to connect the plaintiff with a veterinary surgeon, the averment in the petition that the horses, if afforded such treatment, could with reasonable probability have been saved, is not so uncertain and conjectural as to make the petition demurrable, but the question is one of fact.

APPEAL from the district court for Boone county:  A. M. POST, JUDGE.  *Reversed.*

*Vail & Flory,* for appellant.

*Garlow & Long* and *V. E. Garten, contra.*

DORSEY, C.

The question upon this appeal is whether or not the petition of the plaintiff states a cause of action for negligent failure of the defendant to furnish telephone service. A general demurrer to the petition was sustained, and from the judgment of the trial court dismissing his action the plaintiff appeals.

The preliminary averments of the petition are that the principal business in which the defendant was engaged was to maintain telephone lines and wires throughout Boone county, Nebraska, and contiguous territory and to connect patrons at one station with parties at another station, so that patrons could talk and transmit messages; that it held out to its patrons, including the plaintiff, that it would conduct its business with reasonable care, diligence and dispatch and would make proper connections along its line, so that plaintiff could talk and transmit telephonic messages correctly and with convenient speed; that, relying thereon, the plaintiff, for a valuable consideration, contracted with the defendant to connect, and the defendant did connect, his residence with its telephone system; that about 8 o'clock in the morning of October 29, 1918, the plaintiff discovered that two of his horses had been accidentally poisoned; and that the plaintiff's residence was about 11 miles from Albion and about 10 miles from Newman Grove.

The negligence charged against the defendant consisted in the alleged failure of its operators to connect the plaintiff with veterinarians at Albion in spite of the plaintiff's repeated efforts. It was further set forth in the petition that the horses were so sick that he could not leave them; that Dr. Bulla could not leave his residence and advised calling the Albion veterinarians; that one of the latter was in his office for over four hours while plaintiff was seeking to reach him by telephone and would immediately have answered the call if he had received it; that because of the defendant's negligence the plaintiff was unable to obtain proper medical aid for the horses until about 12 hours after he put in the call; that in all reasonable

probability the horses could have been saved with prompt medical attention, and that they died for lack of such attention; and that the defendant had notice through its operator of the reason and urgency of the call.

We quote from the argument in the brief of counsel for the defendant: "The cause of the loss was, according to the pleading, the poison taken by the horses, with which there is no possible connection with defendant. The proximate and primary cause of their death, if the allegations of plaintiff's petition be true, was poison. If the poisoning of the horses happened without the concurring fault of defendant, plaintiff cannot recover.   *   *   * The fatal cause which ended the life of the horses was working long before the alleged attempt was made to secure the Albion doctors, who were not under the control of defendant. The chain between the act of poisoning and the antidote to be administered and the certainty of saving them has too many broken links to hold a connection between the cause and effect. The death and damage are too uncertain, speculative and remote from the act of poison to ever justify a recovery."

Telephone companies are under the duty of furnishing to their subscribers reasonably prompt and efficient service in the way of giving them connections with other subscribers, and they are liable for any pecuniary loss directly traceable to a breach of such duty as the proximate cause thereof.

The theory of the plaintiff's petition is that the negligence of the defendant prevented him from securing medical aid for the horses from the only source available to him under the circumstances, and that there was a reasonable probability that such aid would have resulted in saving their lives. The attitude of the trial court in sustaining the demurrer was that the allegation of reasonable probability is so uncertain that the court is required to say, as a matter of law, that the petition was based merely on a remote and speculative contingency, not susceptible of exact proof, and that therefore the case should be dis-

missed on the pleading, without inquiry into the facts.

In no case in which death or permanently injurious effects are alleged to have resulted from lack of or delay in medical attention could it be known with absolute certainty whether the proper and timely application of medical skill would have led to a different result. As stated in *Glawson v. Southern Bell Telephone & Telegraph Co.,* 9 Ga. App. 450: "There are some diseases and human ills which so readily respond to the treatment of a physician, according to the general experience of mankind, as to make it merely an ordinary inference, such as we are daily accustomed to indulge and to act upon, to say that if the treatment were applied the malady would be relieved. On the other hand, there are many diseases the results of which are so uncertain, even when the best treatment is had, as to make the chances of recovery always a matter of doubt."

The case just quoted from was an action by a husband to recover for his wife's death alleged to have resulted from the negligence of the defendant telephone company in failing to connect him with a physician, and was based upon the proposition that, if the message had reached the doctor within a reasonable time, the death of the wife would probably have been prevented. In that case, as in the case before us, the trial court sustained a demurrer to the petition, but that ruling was reversed upon appeal on the ground that, although it was in the nature of things problematical whether medical aid would have saved the wife, it was a question of fact for the jury. In that connection it was said in the opinion: "Juries are frequently called upon to settle the probability of things, and to determine, according to human experience, whether this or that result likely did ensue or will ensue from this or that somewhat problematical cause. For instance, it is a common thing for a court to submit to a jury the question as to whether an injury will prove permanent, and to allow them to assess the damages with reference to their finding as to this question—a question often problematical to a

high degree. * * * Yet the effect of insistence of counsel is that we ought to hold, as a matter of judicial cognizance, that the cause of the woman's death was speculative, and that the petition alleges a matter incapable of proof by ordinary methods. It may be that, when the dead woman's condition just prior to her death is described, those who are informed upon the subject can testify to the jury as to the course of human experience as to these matters, and as to what drugs and appliances the physician had by which the hemorrhage could have been stopped; and if it appears that it was not merely possible that the woman's life would have been saved, but that, with practical certainty, it would have been saved, the jury, without exercising any extraordinary function, may be able to say that the failure to get the physician was the direct, natural, controlling, and proximate cause of her death."

In *Central Union Telephone Co. v. Swoveland,* 14 Ind. App. 341, 368, it was held that the value of the horse cannot be considered as an element of damages in an action by its owner for negligence of a telephone company in failing to sooner place him in communication with a veterinary surgeon, as the question whether the horse would have been saved was entirely a matter of speculation. But the force of this decision as an abstract statement of law is qualified by the following language in the opinion: "We do not wish to be understood as holding that cases may not arise in which under similar circumstances it would be proper to submit the question as to whether the death of the animal may be traced to the negligence of the company, but we do not think there was any proper evidence in this case upon which the jury could base a verdict for damages by reason of the death of the horse."

The following rule is stated in *Duncan v. Western Union Telegraph Co.,* 58 N. W. 75 (87 Wis. 173) : "A mistake in the transmission of a telegram requesting the services of a veterinary surgeon cannot be deemed the

proximate cause of the death of a horse belonging to the sender of the telegram, where the evidence is merely conjectural as to whether the life of the horse might have been saved had a veterinary come at once, pursuant to a correct transmission." In this case also it was a question of the sufficiency of the evidence, and the decision does not seem to be based upon the theory that the fact that the horse might, with reasonable certainty, have been saved was incapable of proof.

In *Hendershott v. Western Union Telegraph Co.,* 106 Ia. 529, the court held: "In the nature of things, reasonable probability as to the cause of the death of the horse is the most that can be proven in a case like this; and, if the evidence discloses facts which show such reasonable probability as convinces the jurors as to the cause of death, they may surely act upon it, though, as they were told, they must not indulge in conjecture, speculation, or guesswork. Absolute certainty is not required to entitle a party to recover, but only a preponderance of the evidence."

It is our conclusion that, under the allegations of the petition in this case, the causal connection between the negligence of the defendant and the loss of the horses is not so remote and conjectural as to justify the court in sustaining a demurrer to the petition for that reason; but that it is a question of fact to be submitted to the jury, unless it shall conclusively appear from the evidence that the alleged negligence was not the proximate cause.

We recommend that the judgment of the court below be reversed and the cause remanded.

PER CURIAM. For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded, and this opinion is adopted by and made the opinion of the court.

REVERSED.