1176 NEW JERSEY MISCELLANEOUS REPORTS.

Essex County Court of Common Pleas—Cody v. N. Y. Telephone Co.

ESSEX COUNTY COURT OF COMMON PLEAS.

MICHAEL J. CODY

*v.*

NEW YORK TELEPHONE COMPANY.

---

JAMES J. MCGRATH

*v.*

NEW YORK TELEPHONE COMPANY.

[Decided November 12th, 1925.]

Negligence—Failure of Telephone Company to Make Prompt Connection With Fire Department in Case of a Fire Alarm —Evidence Showed Seventeen Minutes Delay—Evidence Did Not Show Delay to be the Cause of Loss of Building—To Hold the Company Responsible, Clear Weight of Evidence Must Show More Than Probable Responsibility—It Must be Shown That But For the Negligence the Loss Would Not Have Occurred.

On action at law. On motion to nonsuit.

*Mr. George A. Henderson,* for the plaintiff.

*Messrs. Smith & Slingerland* (by *Mr. Frederick W. Smith*), for the defendant.

PORTER, J.

The facts in this case, briefly, as the court understands them, are that Mr. Cody was awakened from his sleep at about twenty minutes of five, on the morning of May 6th,

1921, by some man passing along the street shouting "fire." Presumably he saw the fire in the garage. Miss Schill, who lived across the street, says that she was also awakened from sleep by a shout of "fire" that she heard from a passer-by on the street. That was the first alarm that was given, so far as the evidence goes, of the existence of this fire. Mr. Cody says that he immediately jumped out of bed, looked out of the window and saw flames through the window of the garage next door, which was owned by him and rented to the other plaintiff, Mr. McGrath, who conducted a garage there, and in which was stored eighteen or twenty automobiles. He immediately, without waiting to put on any garments, went out into the hall and took up his telephone receiver in an attempt to get a connection by telephone with the fire department. He knew the number of the telephone of the fire department, number two, so he shouted through the telephone "number two," and kept repeating it. Receiving no response he then shouted through the telephone, "fire," repeatedly. His married daughter was asleep in a bedroom across the hall, and she was awakened from her sleep, not by the shout of the man on the street that had caused Mr. Cody to be awakened, but by her father at the telephone; presumably she awakened as soon as her father began to talk through the telephone. She immediately got up and picked up her bathrobe, but did not wait to put it on in her bedroom, but put it on as she was traveling through the hall toward her father, who was at the telephone. Her baby was asleep in the bedroom in which her father slept. Her father told her that the garage was on fire and she took the receiver from him in an effort to get the operator, without success. Then she dropped the receiver and went in, got her baby, and, without dressing any more than she had, as I recall the testimony, went out with her baby in her arms to Miss Schill's house.

Mr. Cody very honestly and very properly refuses to testify as to the number of minutes that he was trying to get the telephone company. He says that he would not hazard

an estimate of the time. It seemed like a long time to him. It seems to me that it could not have been a very long time, because, if I am right in my understanding of the testimony, the daughter was awakened immediately when he began calling the operator; as I assume that he did not shout in any too gentle a voice, he being in an excited condition, and that she got out to the telephone almost immediately, so there could not have been much space of time that elapsed from the time Mr. Cody began telephoning to the time his daughter took the telephone from him. She was unwilling to state the length of time. In one part of her testimony she said she did not suppose it took ten seconds to get to her father. She was not willing to testify as to the number of minutes that she was unsuccessful in getting her connection.

Now, on the other hand, Miss Schill says that she is employed in industrial work where she is engaged in piece work, and that by reason of that fact she is trained with respect to the observance of the passage of time; that the first thing that she did, immediately upon being awakened by the shouts of fire in the street, was to attempt to get into connection with the telephone company, and that it took, as I recall her testimony, some three minutes, as she estimates the time, and another minute and a half after she got the central operator before she got the connection with the fire department and gave the alarm.

The little boy, Tony, says that he carries papers; that he awoke on the morning of the fire and left his bedroom and walked out to the kitchen, where there was an alarm clock, to see whether it was time to go out and get his papers, and that he observed that it was twenty minutes to five by the kitchen clock; that he left his clothes in the kitchen the night before when he undressed; that the kitchen was illuminated by flames from the garage, which was around the corner from his house. He could look across the yard and see the garage; he called to his father and his brother, and his brother got up and partially dressed and ran out to the signal box to send in an alarm, and Tony stayed in the house, dressing and

NEW JERSEY MISCELLANEOUS REPORTS. 1179

Essex County Court of Common Pleas—Cody v. N. Y. Telephone Co.

watching the fire, waiting for the firemen, and watching the clock. His testimony corroborates that of the firemen with respect to the time that the firemen got there, a minute or two after five. The firemen testify that they got the alarm by telephone at three minutes of five, or thereabouts, some seventeen minutes after the fire was first discovered.

Mr. Schill, Miss Schill's brother, says that he got up and saw the fire, and that it was then a quarter of five, and that the paper train went up at two minutes past five, at which time the firemen were arriving. He also says that when the firemen came the fire had assumed large proportions, and it was necessary to send in another alarm, and, further, that the building was practically destroyed.

That, in brief, is as the court understands the facts.

Let us assume that, for the purpose of this motion, that there has been proof of a delay of several minutes in the communication by Miss Schill with the telephone company, and inability entirely by Mr. Cody and his daughter to communicate with the telephone company at all. Let us further assume that, from the facts as I have stated them, there was negligence on the part of the company to promptly answer the telephone and make the connection. Let us assume, further, that the pleadings are in proper form, in that you have properly stated the cause of action.

There is a case reported in another state where the telephone company was held responsible under these facts: A man's wife had given birth to a child and had a hemorrhage, and the doctor told the husband that if there was any recurrence of bleeding he was to immediately telephone him. The hemorrhage resumed, and the husband could not make connection with the telephone company, and his wife bled to death. The testimony further was that had the doctor been notified promptly—it being shown that he was in his office—he could have gotten there within a certain time and that he could have saved her life by stopping the hemorrhage. Now, there was something that was ascertainable; there was something that they knew about. He had previously stopped the

hemorrhage and would have been able to do so again. This case is not analogous.

To hold the telephone company liable the plaintiffs must show by the clear weight of the evidence that there was more than a possible, or even a probable, responsibility. The plaintiff must show that, but for the negligence of the defendant, the loss would not have occurred, and the facts necessary to establish this connection between negligence and loss must not rest upon uncertainty or indeterminate premises. A thing not susceptible of proof cannot be made the basis of a recovery in an action at law.

The alleged negligence is too remote in law from the fact of the destruction by fire of his building to constitute such loss a proximate cause. Nothing appears from the evidence that the building would not have been destroyed but for the alleged negligence of the telephone company. The defendant did not start the fire. No one knows how long the fire had been raging nor how extensive it had become, or how near it was, when discovered, to oil or other highly inflammable material, and, therefore, whether, if the firemen had promptly arrived, the building would have suffered any less damage than it did.

It has not been shown that the city was under a legal duty to furnish water for putting out the fire, or by sending its fire apparatus for the purpose of putting out the fire. It has not been shown that plaintiffs could have maintained an action against the city of Orange for its negligence if it had been negligent in not promptly responding to the alarm, aside from your failure to show that there was any obligation on the part of the telephone company to have given prompt connection, because of its franchise, its contract or otherwise.

Time was precious in this case. Who can say how many minutes meant the destruction of this building under the prevailing circumstances. Suppose the telephone connection had been made promptly, would the firemen have answered promptly; was the fire apparatus suitable? None of these

intervening agencies were under the control of the telephone company. Each of these agencies must be linked together in a line of causation in order to connect it with the loss. How far would the fire have spread at the time the firemen would have been likely to have reached the scene if the telephone connection had been promptly is left, by the evidence, a matter highly speculative.

For these reasons the motion for a nonsuit is granted, and an exception is allowed the plaintiff in each case.

That leaves it unnecessary to pass on the question of the sufficiency of the pleadings.

Exception noted as ground of appeal.