[No. 29971.    Department One.    October 1, 1946.]

AAGE FOSS, *Appellant*, v. THE PACIFIC TELEPHONE &
TELEGRAPH COMPANY, *Respondent.*[1]

[1]Reported in 173 P. (2d) 144.

*Murray & Hedgcock* and *Howard W. Hedgcock,* for appellant.

*McMicken, Rupp & Schweppe* and *John N. Rupp,* for respondent.

MILLARD, J.—This action was brought to recover for destruction of plaintiff's buildings and fixtures and for loss of future profits, by fire alleged to have resulted from defendant's negligent delay in supplying telephone connection to a fire department. The appeal is from the judgment of dismissal rendered upon plaintiff's refusal to plead further after a demurrer had been sustained to his complaint.

There is no claim that the fire was started or caused by respondent's neglect. Respondent's liability is based on appellant's claim that a delay in respondent's telephone service delayed arrival of fire department from nearby town at scene of fire in time to extinguish the fire. The allegations of the complaint are summarized as follows:

Respondent, a foreign corporation, is engaged in the telephone business in this state and represents to the public that it will conduct its business with reasonable care, diligence, and dispatch in accordance with legal requirements. Appellant owned and operated a dance hall, restaurant, and recreation building designated as "Foss's Shadow Lake." Appellant entered into a contract with respondent for telephone service and was supplied with a telephone instrument and connections with respondent's Seattle exchange some time prior to the date of the fire which destroyed appellant's building. The fire department of the town of Kent was also a subscriber for respondent's telephone service.

About 3:30 a. m., June 3, 1945, a small fire was discovered in the rear of appellant's building. Appellant immediately attempted to telephone the Kent fire department, but respondent's telephone operator in Seattle failed to respond to his call for a period of at least fifteen minutes. The Kent fire department was at all times ready, willing, and able to respond to the call received from appellant, and that department immediately responded to appellant's call when

finally completed fifteen minutes later. The fire department arrived at the scene of the fire ten to twelve minutes from the time the call was received by it. "That if they had arrived five minutes sooner they could have saved the building with only minor and inconsequential damage resulting."

Appellant further alleges that, by reason of the neglect of respondent's operators to promptly connect his telephone line to the Kent fire department, appellant's building, together with the furniture, fixtures, and merchandise therein, were destroyed by fire.

■ The complaint of appellant alleges a contract of appellant with respondent and a negligent failure on the part of respondent to perform the same. The gravamen of the action is a breach of contract, and the rule of measure of damages for such breach of contract is enunciated as follows in *Sedro Veneer Co. v. Kwapil*, 62 Wash. 385, 113 Pac. 1100:

"The general rule of measure of damages growing out of a broken contract is stated in the leading English case of *Hadley v. Baxendale*, 9 Exch. 341, 353, as follows:

" 'Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract.' "

"This is probably as comprehensive a statement of the general rule as can be found in any of the authorities, and but few statements of general principles have been more uniformly approved by the courts."

See paraphrase of the rule in Restatement of the Law of Contracts 509, § 330. In the Washington Annotations of 1935 to that section is the statement that the rule of this state is in accord with the Restatement, following which is a long list of our cases supporting the statement.

This contract rule has been the standard of decision in the telegraph cases ever since it was enunciated in 1888, in *Western Union Tel. Co. v. Hall,* 124 U. S. 444, 31 L. Ed. 479, 8 S. Ct. 577. See, also, *Primrose v. Western Union Tel. Co.,* 154 U. S. 1, 29, 38 L. Ed. 883, 14 S. Ct. 1098, in which the supreme court of the United States said:

"Beyond this, under any contract to transmit a message by telegraph, as under any other contract, the damages for a breach must be limited to those which may be fairly considered as arising according to the usual course of things from the breach of the very contract in question, or which both parties must reasonably have understood and contemplated, when making the contract, as likely to result from its breach."

In *Hildreth v. Western Union Tel. Co.,* 56 Fla. 387, 47 So. 820, plaintiff alleged that defendant negligently delayed delivery of a telegram filed with it by the plaintiff requesting plaintiff's husband to meet her at a certain time and place, and that the delay caused the husband to be three days late by reason of which the plaintiff, who was ill, was prevented from being taken to a hospital, and, as a result, she suffered increased illness and pain. On appeal, the allegations of special damages were stricken, since the likelihood of such damages was not communicated to the defendant. The public policy sustaining the rule announced in *Western Union Tel. Co. v. Hall, supra,* is stated as follows by the Florida supreme court:

"Public utility corporations should, as contemplated by law, be required to furnish a prompt and efficient service reasonably adequate to meet the just demands of the public, and to respond in damages for negligent injuries; but, as

also contemplated by law, they should not be required to compensate injuries for which in law they are not responsible. Unlawful requirements of public service corporations would cause unjust injury to those whose labor and property are used in rendering the service, and injuriously affect the service and rates afforded the public, thereby violating positive law and public policy.

"Damages may not be recovered for all the injurious consequences that might be shown to have resulted whether proximately or contemplated or not from mere negligence in performing a stipulated or legal duty or service. A rule authorizing such a recovery would be patently unjust and detrimental to the public welfare. But where there is negligence and no contributory negligence, damages may be recovered for such injurious consequences as follow in ordinary natural sequence from the negligence, or such as reasonably should have been contemplated as the ordinary, natural result of the negligence had proper attention been given to the subject."

In the year 1909, the foregoing contract rule of damages was applied in a telephone case by the Texas civil appeals court in *Southwestern Tel. & Tel. Co. v. Solomon,* 54 Tex. Civ. App. 306, 117 S. W. 214, 118 S. W. xv. In that case, the plaintiff was a subscriber for defendant's telephone service. About two a. m., February 5, 1906, plaintiff's wife "was taken ill with child birth," and plaintiff attempted to telephone a doctor. Due to negligent failure in defendant's telephone service, plaintiff was unable to obtain contact with the central telephone exchange. This forced him to depart from home and ride a horse to summon a physician. When the physician arrived, he was too late to save the mother and she died. It was alleged that had the physician been summoned promptly he would have arrived in time to have saved the life of the woman. Plaintiff's action on those facts for damages for wrongful death resulted in judgment in his favor in the trial court. On appeal, it was held that defendant's demurrer should have been sustained for the reason that the action was one for breach of contract and the contract rule of damages (*Hadley v. Baxendale,* 9 Exch. 341) precluded recovery of the special damages. The court said:

"Tested by this rule, we think the damages in the circumstances are too remote and are not such as both parties would reasonably have understood and contemplated as likely to result from the breach of the contract or the negligence of the company."

In *McFarlin v. Gulf States Tel. Co.*, 257 S. W. (Tex. Civ. App.) 298, it was held that a telephone company is not liable for the damages, if any, caused by the mental pain and anguish suffered by a father because of the fact that he could not obtain connection with the telephone company's operator in order that he might call a physician to attend his sick child and thereby perhaps save the life of the child, or, if not, relieve the child's suffering and pain; since such damages are too remote. To the same effect is *Southern Tel. Co. v. King*, 103 Ark. 160, 146 S. W. 489, Ann. Cas. 1914 B, 780, 39 L. R. A. (N.S.) 402.

In *Barrett v. New England Tel. & Tel. Co.*, 80 N. H. 354, 117 Atl. 264, 23 A. L. R. 947, plaintiff alleged that he was a subscriber for the telephone service afforded by the defendant, that the service was interrupted one day, and that he notified the defendant of that fact, but defendant negligently delayed and failed to restore the service. That night, plaintiff's buildings "accidently took fire," and plaintiff was unable to telephone the fire department. The fire destroyed the buildings. Plaintiff alleged that the greater part of his loss would have been prevented by the fire department had plaintiff been able to notify it promptly by telephone. At the close of the plaintiff's evidence, a nonsuit was ordered, which order was affirmed on appeal.

In the opinion of the court, it is stated that the plaintiff's declaration set out a contract with defendant telephone company and alleged a negligent failure by defendant to perform the contract. The court held that no action sounding in tort could be maintained for such a fault in the state of New Hampshire. The case was argued upon the theory that defendant breached not only its contract with plaintiff, but also breached a public duty as well. The opinion discusses

this point and observes that the authorities are almost unanimous in denying recovery, and that

". . . the great majority of the cases rest upon the proposition that the nature of the duty imposed upon the companies is such that the contract rule, rather than the tort rule, as to damages applies. They do not deny the soundness of the tort rule as here defined, but hold that the rule is not applicable to the situation. . . .

"The evidence in this case shows a typical instance of a contract for the usual and ordinary service, with no knowledge or notice of any emergency. The only wrong complained of is the negative one of failing to perform a service to which the plaintiff was entitled under his contract, or because of the promise of service implied from the nature of the defendant's business. In such a case there is no recovery for the results of the unforeseen situation which thereafter arose."

In *Emery v. Rochester Tel. Corp.,* 271 N. Y. 306, 3 N. E. (2d) 434, the New York court of appeals adopted the rule of *Hadley v. Baxendale,* which is sustained by the overwhelming weight of authority. Plaintiff's daughter died of scarlet fever. An action was brought to recover for her death alleged to have been occasioned through the neglect of defendant telephone company, a public service corporation, in failing to furnish prompt and efficient telephone service, by reason whereof, the complaint alleged the father of the child was unable to call a physician when the child required immediate attention, by reason of which she died. Affirmative defense that a schedule of defendant's rates filed with the public service commission limited its liability for failure of service to pro rata allowances upon the charges, and the facts so alleged constituted a defense to the complaint as a matter of law, was stricken. The court of appeals, in passing upon the sufficiency of the complaint, assumed proximate cause but in denying recovery said:

". . . and in any case, as we think, a telephone company cannot be deemed to have assumed responsibility for special damages of that kind where, as here, the company did not have notice of so indefinite a risk of failure of its service."

See, also, 52 Am. Jur. 128, respecting recognition of the rule that defendant must have notice of special circumstances before he can be held liable for special damages.

In 1 Farnham on Waters and Water Rights, pp. 848, 849 is a discussion of the principle of nonliability of a water company for failure to furnish water to extinguish a fire. The author clearly states, as follows, the sound policy on which the contract rule, which sustains the judgment of the trial court in the case at bar, is based:

"Fires occur constantly in which not only buildings and their contents, but whole sections of cities, are consumed, although all the water that can be used is at hand and turned upon the flames. With all the uncertainty which exists as to what is the particular cause responsible for a fire loss, a water company cannot be held liable for the loss, unless it is held to assume the responsibility of an insurer. Mere breach of a contract to furnish water for the extinguishment of a fire cannot be said to be the cause of the loss, because such cause may have been the negligence of the owner, the criminal act of a stranger, the atmospheric conditions, or any one of numerous other things which might be mentioned. Unless the loss can be said to be the result of the breach of the water company's contract (which could never be said because the influence of other unknown quantities could not be determined) it is not liable for the loss caused by the fire. Keeping in mind the fact that the contract of the water company is to furnish water, and not to extinguish the fire, the rule with respect to damages precludes holding the company liable. Damages must be such as were within the contemplation of the parties; and it certainly cannot be claimed that for the meager remuneration received a water company undertakes to make good the loss which would result from the destruction of a modern city by fire. And the principle applies equally to the destruction of any part of it. For there is no place to draw a line short of absolute nonliability if liability for loss of the entire city is denied. The great weight of authority agrees with this conclusion, although the decisions are not placed on this ground."

■ Appellant's damages were special damages which did not arise naturally from a breach of respondent's contract with appellant and were not in the contemplation of

the parties at the time they made the contract for telephone service.

Even if we ignored the contract rule embodied in *Hadley v. Baxendale*, 9 Exch. 341, which we followed in *Sedro Veneer Co. v. Kwapil*, 62 Wash. 385, 113 Pac. 1100, and applied the tort rule of damages for which appellant contends, respondent's liability does not follow. Under either rule the demurrer should have been sustained as the alleged negligence of respondent was not the proximate cause of appellant's loss of his building, fixtures, etc.

"There is, of course, a distinction between an actual cause, or cause in fact, and a proximate, or legal, cause.

"An actual cause, or cause in fact, exists when the act of the defendant is a necessary antecedent of the consequences for which recovery is sought, that is, when the injury would not have resulted 'but for' the act in question. But a cause in fact, although it is a *sine qua non* of legal liability, does not of itself support an action for negligence. Considerations of justice and public policy require that a certain degree of proximity exist between the act done or omitted and the harm sustained, before legal liability may be predicated upon the 'cause' in question. It is only when this necessary degree of proximity is present that the cause in fact becomes a legal, or proximate, cause.

"The most usual definition of proximate cause of an event is: that cause which, in a natural and continuous sequence, unbroken by any new, independent cause, produces the event, and without which that event would not have occurred." *Eckerson v. Ford's Prairie School Dist. No. 11,* 3 Wn. (2d) 475, 101 P. (2d) 345.

Respondent's neglect, as admitted for the sake of argument by the demurrer, was not the proximate cause of appellant's loss. Appellant's claim of causation rests on pure speculation. Surely we could not hold that anyone could ever say that if respondent's operator had promptly answered appellant's call and made connection of his telephone with the fire department in Kent that the fire department would have immediately answered the telephone; would have promptly left the house where the fire department equipment is kept; would have proceeded rapidly to the scene of the fire without any mishap; would have quickly

arranged its equipment to fight the fire, and would have extinguished the fire with only minor damage to the building.

"Neglect which delays the arrival of means to extinguish a fire does not carry liability for the resulting loss." 3 Sutherland, Damages (4th ed.) 3575, § 961.

In Jones, Telegraph and Telephone Companies (2d ed.) 351, § 256, is the following:

"The authorities are not in harmony as to the amount of damages which may be recovered from a telephone company where it has failed to make prompt, proper and efficient connections—or where it fails to make any connection at all—with other lines at the central exchange. If such failure of duty is the result of mere negligence on the part of the company, only nominal damages, if any, should be recoverable."

See, also, 52 Am. Jur. 127, § 98.

We find seven fire cases which sustain respondent's position, three which denied recovery to plaintiff but on different grounds than that on which respondent's position is based in the case at bar. Only one case supports the position of appellant.

In *Lebanon L. & L. Tel. Co. v. Lanham Lbr. Co.*, 131 Ky. 718, 115 S. W. 824, 21 L. R. A. (N.S.) 115, the complaint is very similar to the complaint in the case at bar. In the case cited, judgment was rendered for the plaintiff and, on the appeal of the defendants, who contended that the trial court had erred in overruling its general demurrer, the court of appeals concluded that the demurrer should have been sustained and the complaint dismissed for the reason that the facts pleaded did not show that, but for the defendants' negligence plaintiff's loss would not have occurred. In that case, it was alleged that the telephone company was responsible for the spread of the fire to the main building of plaintiff because of its failure to promptly furnish connection with the city fire department.

The court said:

"An analysis of the petition shows that it charges: That, if connection had been promptly established between the watchman and the fire department, the man in charge there

would have promptly answered his call, and would have promptly sounded the alarm by ringing the fire bell; that the members of the fire department would have heard the fire bell, when rung, and would have promptly answered the call, and would have reached the fire at least 30 minutes sooner than they did, and before it had spread from the boiler house to the main buildings; that, after having reached the fire, the fire department would have put it out before it had communicated to the main buildings, and the plaintiff would have suffered comparatively no loss. Each of these five independent links must be forged into a chain in order to connect the negligence of the defendant's operator with plaintiff's loss . . . Now, when it is considered that each of these separate agencies is wholly independent of the other, and none of them under the direction or subject to the control of the defendants, it is readily seen that, in order to hold that the negligence complained of was the proximate cause of the injury or loss, a series of presumptions must be indulged in."

In discussing the matter of causation and the law applicable thereto, the court said:

"The loss in this case was due to the fire. This was the primary cause, and, in order to make the negligence of defendants intervene and become the efficient cause, it must be established with certainty that but for their negligence the fire would have been confined to the boiler room. Now, does the petition state such facts as warrant the inference that but for the negligence complained of the fire would not have spread? We think not. The petition proceeds upon the hypothesis that all of the independent intervening agencies would have worked together harmoniously, promptly and efficiently. This is a mere conclusion of the pleader. If the agent of defendant companies had acted promptly, the watchman in the fire tower would have likewise done so, and so on down through the list of the different agencies called into play. Theoretically this is all right, but, as a legal proposition, it is unsound."

In *Volquardsen v. Iowa Tel. Co.*, 148 Iowa 77, 126 N. W. 928, 28 L. R. A. (N.S.) 554, plaintiff alleged, as appellant alleged in the case at bar that he was a subscriber for defendant's telephone service; that a fire broke out in his building; that he endeavored to telephone the fire department; that defendant's operator delayed for ten or eleven minutes in

answering his call; that the building was destroyed and that, but for the defendant's delay, much of his building would have been saved by the firemen who were eventually summoned. The cause was presented to the jury as one involving liability for the breach of a statutory duty of the defendant to render service without unreasonable delay. On appeal and cross-appeal upon the ground that, conceding the defendant's negligence or breach of duty, the plaintiff's damages were not the proximate result thereof, the court, in holding for defendant telephone company, said:

"The fire was the primary cause of the loss. The defendant did not start it, or have aught to do with its origin. The charge against it is that the negligence intervened as the efficient cause in the omission to do that which would have resulted in the extinction of the fire. Of course, if the failure to put out the fire was the direct and natural consequence of the unreasonable delay in making the connection, then there could be no doubt as to defendant's liability. But several links in the chain of sequences are involved in doubt and speculation."

In *Providence Washington Ins. Co. v. Iowa Tel. Co.*, 172 Iowa 597, 154 N. W. 874, plaintiff insurance company issued a fire insurance policy upon an automobile which was destroyed by fire. Plaintiff paid the insured for the loss and under subrogation brought an action against defendant telephone company to recover, on the ground that the loss would have been prevented had defendant's operator relayed the insured's fire alarm call to the city fire department. On the trial, the evidence was to the effect that defendant delayed nearly thirty minutes in transmitting the call of the insured, and that, had the call been promptly transmitted, the fire department would have come immediately and would have extinguished the fire with only small damage to the automobile. The trial court directed a verdict for the defendant, and, on appeal, this was affirmed on the grounds that the damages were too speculative to permit recovery, and that, on the issue of proximate cause, the case of *Volquardsen v. Iowa Tel. Co.*, *supra*, was controlling.

In *Southwestern Tel. & Tel. Co. v. Thomas*, 185 S. W. (Tex. Civ. App.) 396, an action was brought against the telephone company to recover for the destruction by fire of plaintiff's home. Trial to a jury resulted in verdict and judgment for plaintiff. On appeal, the judgment was reversed and the action dismissed. The evidence adduced on behalf of the plaintiff was that his house caught fire one night; that he endeavored to telephone the fire department; that he was unable to obtain contact with defendant telephone exchange for fifteen to twenty minutes; that because of this negligent delay the fire department was delayed twenty to thirty minutes in arriving at the fire; that had the firemen not been so delayed they would have been able to save that portion of plaintiff's house for which recovery was sought, and that, therefore, defendant caused the plaintiff's loss. In reversing the judgment and dismissing the cause of action the court of appeal said:

"The judgment in this cause cannot stand because it is based upon speculation and acts of negligence too remote. In other words, the negligence of the appellant is not shown to have been the proximate cause of the injury. The whole case is predicated upon the theory that if the call had been answered promptly by the exchange operator, the fire would have been extinguished before it reached the two-story part. This presupposes that the fire department would have responded promptly, and there would have been no other mishap of any kind; that the water pressure would have been ample, and the fire apparatus in good working order, no adverse winds, etc. . . . In order to hold the failure of central to take and transmit the call to be the proximate cause of the loss, we must indulge the presumption that everything else would have turned out to perfection; that the fire station bell would have worked, and the fireman would have been awakened; that the department would have been called and would have responded promptly; that the apparatus would have been in good working order, and that nothing would have occurred to prevent the prompt arrival of the firemen; and then, after they had gotten to the fire, everything else necessary to be done in order successfully to combat the fire would have taken place. . . . And after all this, how much of the building would have been saved? What man can say?

Indulging all these suppositions, at last we wind up in mere conjecture as to what damage would have been done. To say that the damage is remote and speculative to a high degree, is stating it mildly."

*Forgey v. Macon Tel. Co.*, 291 Mo. 539, 237 S. W. 792, 19 A. L. R. 1413, is on all fours with the case at bar. Plaintiff in that case, like appellant in the case at bar, alleged that the telephone company's delay was fifteen minutes. On appeal, the judgment in favor of defendant was affirmed, the court stating that the cause and amount of the damages in such instances are too remote and speculative.

In *Cody v. New York Tel. Co.*, 3 N. J. Misc. 1176, 131 Atl. 221, plaintiff brought an action to recover for damages due to a fire. Evidence was adduced that plaintiff discovered a fire in his garage and endeavored to telephone the fire department; that there was a delay of several minutes before the telephone company's operator answered his signal, and that this delay apparently resulted in a similar delay in the firemen's arrival. Plaintiff claimed that he was therefore entitled to recovery for the loss of his garage, since the firemen would have been able to save it had they been called promptly. In granting a nonsuit, the court assumed that the telephone company had been negligent, but held against the plaintiff on the issue of proximate cause, stating the law as follows:

"To hold the telephone company liable the plaintiffs must show by the clear weight of the evidence that there was more than a possible, or even a probable, responsibility. The plaintiff must show that, but for the negligence of the defendant, the loss would not have occurred, and the facts necessary to establish this connection between negligence and loss must not rest upon uncertainty or indeterminate premises. A thing not susceptible of proof cannot be made the basis of a recovery in an action at law.

"The alleged negligence is too remote in law from the fact of the destruction by fire of his building to constitute such loss a proximate cause."

*Whitehead v. Carolina Tel. & Tel. Co.*, 190 N. C. 197, 129 S. E. 602, is an apt authority. It is like the case at bar even to the length of the delays and all that would have or could

have happened as alleged in the complaint in each case. In the case cited, as in the case at bar, the trial court sustained defendant's demurrer to the complaint. On appeal, that holding was affirmed. The court held that defendant's negligence did not cause plaintiff's loss; that the asserted result of the negligent act was entirely speculative, and that the proximate cause of the loss was impossible of satisfactory proof. In that case, the plaintiff made, as does appellant in the case at bar, the same argument as to the effect of the demurrer to the complaint. In answer to that contention, the court said:

"The complaint proceeds upon the supposition that all the agencies intervening between the negligent act and the destruction of the plaintiff's building would necessarily have worked out with perfect efficiency. This of course is an assumption, or inference, or conclusion which, under the authorities we have cited, the demurrer does not admit."

*Mentzer v. New England Tel. & Tel. Co.*, 276 Mass. 478, 177 N. E. 549, 78 A. L. R. 654, was an action to recover for damages by fire alleged to have been caused by defendant telephone company's failure to summon the fire department upon request of plaintiff to do so. The case was decided in favor of defendant not upon the ground of no causal connection between the nonfeasance and the loss, but upon the ground that the telephone company had never contracted nor undertaken to relay fire alarm messages unless it was impossible for the subscriber to remain at his telephone to complete the call himself. The plaintiff could have remained at the telephone to make the call, hence a directed verdict for the defendant was held to be proper.

*Knesek v. Crown Point Tel. Co.*, 82 Ind. App. 603, 147 N. E. 291 and *Standard Iron Works v. Southern Bell Tel. & Tel. Co.*, 256 Fed. 548, are cases in which plaintiff sought recovery from a telephone company for fire damages claimed to have resulted because of the telephone company's negligence. Both decisions denied recovery, but neither is in point, as neither the question of causation or rule of *Hadley v. Baxendale, supra,* is discussed.

Appellant cites as sustaining authority *Boldig v. Urban Tel. Co.*, 224 Wis. 93, 271 N. W. 88. There is language in the opinion in that case in opposition to the rules adopted by the overwhelming majority of courts. That was a fire case in which the attack on the defendant telephone company was based on a positive refusal to give the service after the defendant's operator had been informed it was a fire call. A verdict and judgment in favor of plaintiff were affirmed on appeal.

*Vinson v. Southern Bell Tel. & Tel. Co.*, 188 Ala. 292, 66 So. 100, L. R. A. 1915C, 450, is also cited by appellant. In that case, plaintiff sought recovery for mental anguish and physical suffering sustained by him when he had to run for a doctor because of failure of telephone service. Plaintiff's son had been hurt in an accident, and plaintiff informed defendant telephone company of this fact and of the fact that it would probably be necessary to call the doctor at night. Defendant failed to answer the plaintiff's signal to the central office, and plaintiff had to run a mile and a half to get a physician. Upon the return of the father and physician, the son was dead. In that case, as in *Boldig v. Urban Tel. Co., supra,* the telephone company had full notice of the emergency.

In *Peterson v. Monroe Independent Tel. Co.*, 106 Neb. 181, 182 N. W. 1017, cited by appellant, plaintiff claimed that, because of defendant telephone company's negligence, he was not connected with a veterinarian for some hours therefore delaying professional aid to his horses for twelve hours, and, as a result, the horses died. The Nebraska court, in holding that the facts made out a case for the jury, relied upon *Glawson v. Southern Bell Tel. & Tel. Co.*, 9 Ga. App. 450, 71 S. E. 747, which case is not representative of the law in Georgia. After the decision of the court of appeals, the *Glawson* case was certified to the supreme court of Georgia (140 Ga. 507, 79 S. E. 136), which held that the decision must stand as it was governed by the doctrine of the law of the case, but it refused the request of counsel to overrule *Seifert v. Western Union Tel. Co.*, 129 Ga. 181, 58 S. E. 699, 121 Am. St. 210, and *Southern Bell Tel. & Tel.*

*Co. v. Reynolds,* 139 Ga. 385, 77 S. E. 388, which sustain respondent's position in the case at bar. See, also, *Southern Bell Tel. & Tel. Co. v. Glawson,* 13 Ga. App. 520, 79 S. E. 488, in which the court of appeals of Georgia reversed, on telephone company's appeal, judgment for plaintiff on the ground that failure of defendant's telephone operator to answer the signal did not constitute negligence.

■ Appellant's contention respecting the effect of respondent's demurrer is without substantial merit. The demurrer did not admit the conclusions pleaded by appellant.

Only inferences that logically and necessarily follow from the facts pleaded are carried into the pleadings. A fact is not well pleaded when it is to be inferred only as a conclusion from other facts stated which are not inconsistent with an opposite conclusion. *Puget Mill Co. v. Duecy,* 1 Wn. (2d) 421, 96 P. (2d) 571.

■ The allegation that if the fire company had arrived sooner it could have saved the building with only minor and inconsequential damage resulting, is a conclusion which did not logically and necessarily follow from the facts pleaded. As argued by counsel for respondent, it is obvious that a conclusion that the firemen could not have saved the burning building at all is just as consistent with the facts pleaded in this complaint. See *Forgey v. Macon Tel. Co.,* 291 Mo. 539, 237 S. W. 792, 19 A. L. R. 1413.

Under the rules discussed herein, the judgment should be and it is affirmed.

BEALS, C. J., ROBINSON, JEFFERS, and SCHWELLENBACH, JJ., concur.