## Hans F. Volquardsen v. Iowa Telephone Company, Appellant.

**Telegraphs and telephones:** NEGLIGENT DELAY: PLEADINGS: BURDEN OF PROOF. The delay in the transmission of a telephone message as contemplated by the statute is ordinarily failure to furnish proper connections for personal communication within a reasonable time, as well as in otherwise transmitting messages, and upon a showing of unreasonable delay the burden is placed upon defendant to establish by a preponderance of the evidence that the delay was not due to negligence on its part. But where the petition alleges particular acts of negligence occasioning the delay, rather than negligence in that respect generally, the defendant is only required to prove absence of negligence with respect to the acts alleged.

**Same:** NEGLIGENCE: PROXIMATE CAUSE: EVIDENCE. While a telephone company is liable under the statute for failure to give reasonably prompt connections to a subscriber, only such damages can be recovered as are the proximate result of the proven unreasonable delay. In this action the evidence is held insufficient to show that the destruction of plaintiff's building and machinery by fire was the direct and proximate result of defendant's negligent delay in failing to furnish plaintiff with prompt telephone connections so that he might give a fire alarm.

*Appeal from Scott District Court.*—Hon. A. J. House, Judge.

Thursday, June 16, 1910.

Action for damages resulted in a verdict for the defendant. A motion for new trial based on eleven grounds was filed and overruled as to ten of these and sustained as to one. Both parties appeal; that of defendant being last perfected. *Reversed* on defendant's appeal. *Affirmed* on plaintiff's appeal.

*Cook & Dodge* and *Guernsey, Parker & Miller*, for appellant.

*Henry Thuenen, Jr.*, for appellee.

Ladd, J.—The defendant owns and operates the telephone system in Davenport. The plaintiff was a subscriber and patron. He conducted a wooden shoe factory on the lots where his residence was located. Shortly after 1:30 o'clock in the morning of August 2, 1905, his wife heard a crackling sound, and, upon looking out, noticed a fire in the factory. She wakened plaintiff, who immediately went to the telephone, and took down the receiver for the purpose of giving a fire alarm. Ordinarily, removing the receiver signaled on the switch board at the central office to the employees, who then connected the line with telephone of the person with whom communication is desired. No one responded, though he called for "central" and "worked" the receiver for, as he testified, nine or ten minutes. He then handed the receiver to his wife, who got into communication with the central office in one or two minutes. Upon turning the receiver over to his wife, plaintiff went to the factory, and from there started to the fire department, which had a station about four

and one-half blocks from his house, and met the hose cart on the way. A neighbor had advised the department of the fire, and the men with apparatus were at the scene within a minute and a half thereafter. The petition alleged that "because of the negligence of defendant company's agents in charge of said company's switch board, or because of defendant company's failure to keep sufficient or competent persons in charge of said switch board, plaintiff was unable to obtain a response from the central office of the defendant company," and by reason thereof the entire factory was destroyed, when, but for said negligence, he would have been able to have given the alarm to the fire department promptly and much of his factory building and all of the machinery therein would have been saved. The court submitted the issues of negligence above mentioned to the jury, but ruled, in rejecting evidence and in refusing instructions, that the damages to the building and machinery were not the proximate result thereof. The jury returned a verdict for defendant, but a new trial was granted on the ground that the court had not submitted to the jury whether "defendant was negligent in the matter of keeping its appliances for communication with central in reasonable repair."

II. This ruling was based on statutes providing, in

1. TELEGRAPHS AND TELE-PHONES: negligent delay: pleadings: burden of proof.

effect, that, upon proof of unreasonable delay in the transmission of a message, the burden is upon a telephone company to overcome the inference of negligence to be drawn therefrom. These statutes may be set out:

Sec. 2163. The proprietor of a telegraph or telephone line is liable for all mistakes in transmitting or receiving messages made by any person in his employment, or for any unreasonable delay in their transmission or delivery, and for all damages resulting from failure to perform the foregoing or any other duty required by

law, the provisions of any contract to the contrary notwithstanding.

Sec. 2164. In an action against any telegraph or telephone company for damages caused by erroneous transmission of a message, negligence on 'the part of the telegraph or telephone company shall be presumed upon proof of erronous transmission or of unreasonable delay in delivery and the burden of proof that such error or delay was not due to negligence upon its part shall rest upon such company; but no action for the recovery of such damages shall be maintained unless a claim therefor is presented in writing to such company, officer or agent thereof, within sixty days from time cause of action accrues.

Of course, the method of communication over a telephone differs from that by telegraph. Ordinarily in the former the company merely puts the sender in connection by wire with the sendee and the message is transmitted by word of mouth. The delay in the transmission or delivery contemplated by the statute is that of not furnishing the proper connection within a reasonable time as well as in otherwise transmitting messages so that upon a showing of an unreasonable delay by plaintiff it devolved upon defendant to establish by a preponderance of the evidence that such delay was not due to negligence on its part. Had the petition merely alleged unreasonable delay without describing the particular acts of negligence occasioning it or have alleged negligence generally, the ruling of the court might have been upheld. *Engle v. Railway,* 77 Iowa, 661. Ordinarily the defendant is in court to answer the matters averred in the petition only. *Heald v. Telegraph Co.,* 129 Iowa, 326; *Edgerly v. Insurance Co.,* 43 Iowa, 587; *Wirstlin v. Railway,* 124 Iowa, 170. And, if the instructions present the theory of the case as stated in the petition, the plaintiff has no cause of complaint. *Maloney v. Railway,* 95 Iowa, 255; *Denton v. Railway,* 52 Iowa, 161; *Briscoe v. Reynolds,* 51 Iowa, 673. Though it may not have been necessary to allege

in the petition wherein defendant was negligent, plaintiff did so, and this limited the inquiry as to the grounds of negligence thus charged. The plaintiff, having asserted the particular acts or omissions which occasioned the unreasonable delay, ought not to be permitted to take exception because of defendant's omission to prove freedom from negligence in other respects. And this is the rule long since adopted by this court in cases arising under similar statutes. Section 2056 of the Code, as construed, declares a railroad company liable *prima facie* "for all damages sustained by any person on account of loss or of injury to his property occasioned by the operation of such railroad;" the burden being on the company to exonerate itself from the charge of negligence on proof of damages sustained in the manner mentioned, and this court held in *Engle v. Railway, supra,* that it is sufficient to allege the facts as indicated in the statute without specifying the respects wherein the company has been negligent in setting out the fire. But, when this is done, we have discovered no case holding that plaintiff may rely on other grounds of negligence than those alleged or that more is exacted from the defendant to entitle it to a verdict than a showing of freedom of negligence in the respects charged in the petition. In other words, the plaintiff can not base his claim on one kind of negligence and recover on another, and the following decisions expressly so decide: *Carter v. Railway,* 65 Iowa, 287; *Miller v. Railway,* 66 Iowa, 364; *Babcock v. Railway,* 72 Iowa, 197. The allegations of the petition restrict the field of inquiry to the grounds of negligence stated therein, and all really decided in *Engle v. Railway, supra,* was that, even though alleged in the petition, the burden was on defendant to show itself free from negligence in the respects charged. The reference to the grounds as thus specified in that case as "redundant" was not accurate, but, as none of the cases last cited were mentioned an intention to overrule them

ought not to be inferred, especially when in harmony with elementary rules of pleading. It follows that, even though enough was shown to cast the burden of proving itself free from negligence upon defendant, it was not required to do more than refute the grounds specified in the petition, and for this reason the court erred in granting a new trial.

II.   In ruling on the admissibility of evidence and in the refusal of instructions requested, the court held the damages to the building and machinery therein too remote,

2. SAME: negligence: proximate cause: evidence.

and for this reason that only nominal damages could be recovered. On this ground, also, plaintiff asked a new trial, but this was denied, and he has appealed from the ruling. As seen, the liability of a telephone company is defined by statute, but the damages recoverable must be the proximate result of the unreasonable delay proven. The duty alleged to have been violated was that to the subscriber as such and not owing to any special undertaking to maintain a fire alarm system in the city. Conceding the delay of the employees at the central office to furnish connection promptly with the fire department hose company No. 6 to have been unreasonable and the negligence to be inferred therefrom under the statute unexplained, was such delay the proximate cause of the loss? If so, a new trial was rightly granted even though on another ground. If not, the verdict should have stood and judgment have been entered thereon. The fire was the primary cause of the loss. The defendant did not start it, or have aught to do with its origin. The charge against it is that the negligence intervened as the efficient cause in the omission to do that which would have resulted in the extinction of the fire. Of course, if the failure to put out the fire was the direct and natural consequence of the unreasonable delay in making the connection, then there could be no doubt as to defendant's liability. But several links in the

chain of sequences are involved in doubt and speculation. The fire was burning not only before plaintiff reached the receiver, but before he was awakened by his wife, who had heard the crackling of flames. Conceding that he was at the telephone nine or ten minutes, though minutes seem hours at such times, and that connection was made at the central office within two minutes thereafter, yet, as the hose company had been notified by another, there could not have been a delay of more than ten or twelve minutes, and, when the firemen arrived, the fire was beyond control. At what time must they have been on the ground to have saved the property? No one can answer save from conjecture. All realize that in such emergencies time is precious, but who can say from the situation as presented in this case how many minutes meant the loss of the plaintiff's property? Suppose the connection at the central office had been made promptly, would the fireman in charge of the fire station have responded promptly and promptly have rung the fire bell? Would the members of the department have heard and promptly have repaired to the scene? Was the apparatus for extinguishing the fire in working order and the water supply accessible and sufficient? Would all these intervening agencies have operated harmoniously and efficiently and with such promptness as to have put out the flames in time to have avoided a total loss? Manifestly these are matters of speculation, and yet all this must be assumed if the loss is to be traced to defendant's negligence. Each of these independent agencies necessarily must be linked together in a line of causation in order to connect it with the loss. None of them were under the direction or control of the telephone company.

Moreover, how far the fire had spread at the time the firemen would have been likely to have reached the scene had the connection been promptly made is left by the evidence a matter of speculation merely. And then there

are the weather conditions and the character of the material to be taken into account. After the experience of ages, fighting fire, even with modern machinery and apparatus, is precarious business, and uncertain in its results. Had everything worked out as calculated after the fire was over probably some of the building and machinery might have been saved. But the basis for a legal inference of this kind was not furnished by the evidence. The negligence of the telephone company may be ascertained, but that falls short of connecting it with the loss which is only possible through agencies entirely independent. If it, as the dominating force, acted through the intervening agencies, as mere instruments or vehicles in a natural line of causation, to the loss, there would be ground for saying defendant was liable. But the intervening agencies were independent, and what might have happened pure matter of speculation. The situation differs from that in which a hose through which water is being poured on a fire is cut and because thereof the flames which were being extinguished consume the property, for there the wrong is in preventing the fire department when actually engaged in extinguishing the fire from accomplishing its design. The circumstance that the firemen act voluntarily affords the wrongdoer no excuse. Whatever the instrumentalities, his act is the direct cause of shutting off the water supply. Thus in *Metallic Mfg. Co. v. Railway,* 109 Mass. 277 (12 Am. Rep. 689) the plaintiff's manufacturing plant caught fire and the hose was extended across defendant's track and connected with a hydrant. The water derived therefrom was applied to a fire so as to diminish it with the probability that it would have been extinguished in a short time when a freight train came along, and, though duly warned, carelessly ran over the hose, and injured it so that it could not be seasonably repaired, and the plant was consumed. The defendant was held liable on the principle that to extinguish fire,

firemen were authorized to take possession of the right of way. Though the hose was not plaintiff's property nor the firemen its employees, they were actually furnishing water to plaintiff, and thereby extinguishing the fire, and were rendering the same service as if hired by it and using its hose. Cutting off the supply in these circumstances was "as really an interference with plaintiff's possession as if it held the possession under deed and as if the men were laboring under a contract." The wrong was held to have been the proximate cause. This case was followed in *Little Rock Traction & Electric Co. v. McCaskill,* 75 Ark. 133 (86 S. W. 997, 70 L. R. A. 680, 112 Am. St. Rep. 48). See *Mott v. Railway,* 1 Rob. (N. Y.) 585. In *Kiernan v. Metropolitan Construction Co.,* 170 Mass. 378 (49 N. E. 648) the defendant interfered with the use of a hydrant by the firemen delaying the connection of the hose therewith so that the plaintiff's house was destroyed when but for such interference probably it would have been saved. The defendant was held liable, the court saying that, "though there was no obligation upon the city to extinguish the fire, it does not follow that the plaintiff was not deprived of anything to which she had a legal right if the defendant obstructed the fireman in getting water from the hydrant. She has a legal right to have firemen get water if they choose to do so from a supply provided especially for that purpose, and, while its obstruction may not have been a crime, . . . it was a tortious and wrongful interference with persons engaged in putting out the fire." In these cases stress is laid on the circumstances that, though the firemen or city may not be under legal obligation to extinguish the fire, *Tainter v. City of Worcester,* 123 Mass. 311 (25 Am. Rep. 90), they were actually engaged therein, and but for the direct interference with the hose or hydrant would have extinguished the fire. It seems unnecessary to elaborate on the distinction between these cases and that at bar between direct inter-

ference with the work of extinguishing fire actually in progress and the negligent omission of being instrumental in procuring such work to be undertaken by others. Enough has been said to indicate our conclusion that the damages proposed to be proven were remote and speculative in character, and the court rightly so held. *Lebanon, L. & L. Tel. Co. v. Lanham Lumber Co.* (Ky.) 115 S. W. 824 (21 L. R. A. (N. S.) 115) is directly in point. The rulings were correct.

*Reversed* on defendant's appeal. *Affirmed* on plaintiff's appeal.