BOLDIG, Respondent, vs. URBAN TELEPHONE COMPANY, Appellant.

*December 10, 1936—March 9, 1937.*

94

For the appellant there was a brief by *Goggins, Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Theo. W. Brazeau.*

For the respondent there was a brief by *Eberlein & Larson* of Shawano, and oral argument by *M. G. Eberlein.*

The following opinion was filed January 12, 1937:

NELSON, J. The facts, which are either undisputed or have basis in the testimony, may be summarized as follows: On April 10, 1935, the plaintiff owned a sawmill situated in Shawano county, four and a quarter miles from the village of Bowler. The mill was a two-story building, twenty-six feet wide and eighty feet long. Three of the outside walls of the basement thereof were of stone construction. The mill otherwise was of wood construction. Close to the mill and

on the southwest side thereof was a building described as the "filing room." It was a one-story building and housed the water power. Next to the filing room was a lean-to, described as the boiler room. The mill was located on the bank of the Embarrass river and within twenty feet therefrom. At the time fixed by the plaintiff's witnesses as about 9:15 p.m., a fire was discovered in a pile of kiln wood near the boiler-house. Whereupon, Lee Boldig, one of the plaintiff's adult sons, ran to his father's house, a distance of about thirteen rods, where he met one Hanson, who had just arrived in his automobile. Boldig requested Hanson to contact the Bowler fire department, and to request it to come out and assist in putting out the fire. Hanson suggested that Kriewaldt, who resided immediately across the road from the firehouse in Bowler, be called. In calling a subscriber at Bowler it was necessary to call the exchange at Marion. Hanson called the operator at Marion on the plaintiff's telephone and requested a connection with Kriewaldt's residence, whereupon the operator said, "hold the line a minute." She then asked the number of the telephone that was calling and the correct number was furnished. She then told Hanson that that telephone was not entitled to service because it was in default (concededly an error on her part). He then asked: "Can't we have service in case of fire?" and the operater replied "sorry." Hanson then told her to "go to hell" and hung up the receiver. According to the plaintiff's testimony, the call mentioned was put in at about 9:20. The fire spread to the boiler-house, then to the filing room, and finally to the roof of the west end of the mill. Hanson testified that at 9:45, one-half hour after he first saw the fire, it was just starting on the main roof over the machinery and equipment. Matt Hanson, another witness, testified that at 9:45, half an hour after the fire was discovered, the fire was creeping over the top of the mill roof. Berton Faevel testified that at 9:45, the west end of the mill was just beginning to catch fire. Lee Boldig

testified that at 9:45, one-half hour after the fire was dis-
covered, the fire was confined to the top of the filing-room
roof, and was, at that time, creeping up on to the mill roof;
that at that time the fire was not in the mill at all; that it was
three quarters of an hour before the fire actually got into the
mill proper where the machinery was located. The wind that
night was against the fire. A bucket brigade did what it
could to retard the spread of the fire. The Bowler fire de-
partment was under no obligation to render any service to
the plaintiff, since his mill was located outside of the village
of Bowler, but it appears that the Bowler fire department had
many times responded to such calls upon being requested so
to do, the consent of the president of the village or of a
member of the board of trustees being first obtained. The
president of the village testified that had the request been
made he would have consented promptly to the fire depart-
ment's proceeding to the Boldig fire. It further appears that
Kriewaldt, who was the assistant fire chief at Bowler, was at
his home and would in all probability have received the mes-
sage, had the requested connection not been refused. It fur-
ther appears, that it would have taken about ten minutes to
obtain the consent of the president, to sound the alarm, and
to muster enough of a crew to manage the Bowler fire-fight-
ing equipment which was installed upon a truck; that it would
have taken not over eighteen minutes to drive the truck from
Bowler to the Boldig mill, and not over five minutes to com-
mence to pump and throw water. It further appears that the
equipment was in good condition and capable of throwing
three hundred sixty gallons of water per minute. One Hilli-
ker, a fire warden, arrived at the fire at about 10:15, and
upon being informed of the refusal of the defendant to con-
nect the Boldig residence with the Bowler fire department,
volunteered to drive into Bowler, inform the department, and
request that the fire department come out to the fire. Hilli-
ker contacted a member of the fire department who in turn

contacted the president of the village, who promptly gave his consent to the equipment going to the fire. The alarm was sounded, a crew mustered, and the fire truck was driven to the mill. It arrived at the mill considerably more than an hour later than it would have arrived there had the telephone connection been given. At that time the mill was practically destroyed, but the department effectively checked the fire in the course of a few minutes. A number of witnesses who were present at the fire, who observed its progress, who later on saw the Bowler fire department in operation, were permitted to state their opinions as to the length of time it would have taken the Bowler fire department to put out the fire, had it been at the fire at 9:30 or 9:45; and also as to the amount of damages that would have been sustained had the fire been extinguished at those times. This testimony was objected to as incompetent because the witnesses were not qualified to give expert opinions.

The question for determination is whether the evidence, rationally considered, is sufficient to permit of the inference to a reasonable certainty, that had the defendant promptly complied with the request for a connection with Kriewaldt's residence, property of the reasonable value of $1,500 would have been saved by the Bowler fire department.

The defendant contends, (1) that there can be no liability on the part of the defendant for any damages which the plaintiff sustained, because there was no obligation on the part of the Bowler fire department to attend a fire outside of the village, and because the maintenance of a fire department by a village is a governmental function, and the village would not have been liable to the plaintiff for failure to respond to a call or for negligence in doing so, even though the mill had been located within the village. *Engel v. Milwaukee,* 158 Wis. 480, 149 N. W. 141; *Highway Trailer Co. v. Janesville Electric Co.* 187 Wis. 161, 204 N. W. 773; (2) that since there was no legal obligation on the part of the village

to respond, there could be no legal liability of the defendant company in failing to give the plaintiff a connection; and (3) the plaintiff's case is grounded only on speculation and conjecture and the damages are too remote to afford a basis of recovery. In support of its contentions, the defendant cites *Forgey v. Macon Telephone Co.* 291 Mo. 539, 237 S. W. 792, 794, 19 A. L. R. 1413; *Lebanon, Louisville & Tex. Tel. Co. v. Lanham Lumber Co.* 131 Ky. 718, 115 S. W. 824, 21 L. R. A. (N. S.) 115; *Volquardsen v. Iowa Telephone Co.* 148 Iowa, 77, 126 N. W. 928, 930, 28 L. R. A. (N. S.) 554; *Providence Washington Ins. Co. v. Iowa Telephone Co.* 172 Iowa, 597, 154 N. W. 874.

Before discussing the cases cited, attention is directed to the provisions of two sections of our statutes which materially bear upon this controversy. Sec. 180.19, Stats., so far as here material, provides:

"*Damages for nondelivery of message.* Persons owning or operating any . . . telephone . . . line . . . shall be liable for all damages occasioned by the failure or negligence of their operators, . . . in receiving, . . . transmitting or delivering . . . messages. . . . "

Sec. 175.06, Stats., provides in substance, and so far as here material, that it shall be the duty of every telephone company engaged in the business of leasing telephones to the public or supplying the public with telephones and telephonic service, upon payment of the usual or customary charges therefor to furnish to every person without unreasonable delay a telephone with all the proper or necessary fixtures as well as connection with the central office or telephone exchange, if desired, and to connect the telephone of such person with the telephone of any other person having a connection with the same whenever requested to do so. It is clear, under the latter statute, that it was the duty of the defendant company, upon being requested so to do, to connect the plaintiff's telephone with Kriewaldt's residence and with-

out unreasonable delay. The words "transmitting or delivering" found in sec. 180.19, are broad enough when considered in connection with telephone service, to include a connection with another subscriber. It is also clear that when the defendant's operator, because of her erroneous belief that the plaintiff was in default and therefore not entitled to service, refused the requested connection, she rendered her employer, the defendant, liable for all damages occasioned by her failure to connect the plaintiff's phone with that of Kriewaldt's. While this court has several times considered cases growing out of asserted failures of telegraph companies to deliver telegrams promptly and involving damages occasioned thereby, *Summerfield v. Western Union Tel. Co.* 87 Wis. 1, 57 N. W. 973; *Duncan v. Western Union Tel. Co.* 87 Wis. 173, 58 N. W. 75; *Hartstein v. Western Union Tel. Co.* 89 Wis. 531, 62 N. W. 412; *Fisher v. Western Union Tel. Co.* 119 Wis. 146, 96 N. W. 545; *Barker v. Western Union Tel. Co.* 134 Wis. 147, 114 N. W. 439, it has not been called upon to determine a controversy involving a claim for damages asserted to have been caused or occasioned by the failure or refusal of a telephone company to furnish a connection.

In *Forgey v. Macon Telephone Co., supra,* recovery was sought on the ground that the telephone company had negligently failed to answer a call put in to notify the city fire department of a fire. The court held, on appeal from an order sustaining the defendant's demurrer to the plaintiff's complaint, that since there was no legal duty on the part of the city to respond, had it been notified of the fire, there could be no liability on the part of the telephone company. The decision was obviously ruled by the prior holdings of that court to the effect that a water company, under contract with a city to furnish a sufficient and adequate supply of water to extinguish fires, where the city maintains a fire department whose duty it is to respond at all times to fire alarms, is not liable to a property owner for the destruction of his property

by fire by reason of the failure of the water supply, because the city was acting in a governmental capacity both in establishing a fire department and in contracting with the water company for water to extinguish fires. The court said:

"It would seem to follow that if a water company cannot be held liable for damages for negligence in not supplying the city fire department with sufficient water to extinguish fires, whereby the citizen's house is destroyed by fire, a telephone company cannot be held liable for negligently failing to answer a call for the fire department by one of its subscribers, to notify said department of a fire at such house."

There is nothing in the opinion indicating that Missouri had adopted a statute similar in its purpose to that of sec. 180.19, which expressly provides for the recovery of damages occasioned by the failure or negligence of the operator of a telephone company.

In *Lebanon, Louisville & Tex. Tel. Co. v. Lanham Lumber Co., supra,*—a case involving a claim for damages based on the assertion that a telephone company had negligently failed during an interval of twenty to thirty minutes to effect a telephone connection between the night watchman at the plaintiff's plant and the local fire enginehouse, during which time the fire had gained such headway as to be beyond control when the fire company finally reached the scene of the fire, the supreme court of Kentucky held, on demurrer, that under the allegations of the petition the claim rested upon speculation and conjecture. The court said:

"The loss in this case was due to the fire. This was the primary cause, and, in order to make the negligence of defendants intervene and become the efficient cause, it must be established with certainty that but for their negligence the fire would have been confined to the boiler room. Now, does the petition state such facts as warrant the inference that but for the negligence complained of the fire would not have spread? We think not. The petition proceeds upon the hypothesis that all of the independent intervening agencies

would have worked together harmoniously, promptly and efficiently. This is a mere conclusion of the pleader. If the agent of defendant companies had acted promptly, the watchman in the fire tower would have likewise done so, and so on down through the list of the different agencies called into play. Theoretically this is all right, but, as a legal proposition, it is unsound."

The intervening agencies referred to were: That if a connection had been promptly furnished between the watchman and the fire department, the man in charge thereof would have promptly answered his call and would have promptly sounded the alarm by ringing the fire bell; that the members of the fire department would have heard the fire bell when rung and would have promptly answered the call, and would have reached the fire at least thirty minutes sooner than they did and before it had spread from the boilerhouse to the main buildings; that after having reached the fire the department would have put it out before it spread to the main buildings, and that the plaintiff would have suffered comparatively no loss. Those agencies were described by the court as the independent links which had to be forged into and joined in order to connect the negligence of the defendant's operator with the plaintiff's loss. It seems clear that had all of the so-called agencies been properly pleaded and proved to a reasonable certainty upon a trial, legal liability would have been found even by the Kentucky court.

In *Volquardsen v. Iowa Telephone Co., supra,* recovery of damages was sought on the ground that the company's servants had failed promptly to connect the plaintiff by telephone with the fire department after the plaintiff had discovered that his factory was on fire. The plaintiff asserted that but for such negligence he would have been able to give the alarm to the fire department promptly and much of his factory building and all of his machinery would have been saved. Under an Iowa statute similar to ours the proprietor

of a telephone line was liable for damages resulting from any unreasonable delay in the transmission or delivery of telephonic messages. The court held that the delay of the transmission or delivery contemplated by the statute was that of not furnishing the proper connection within a reasonable time, and that by virtue of the provisions of another statute, upon the plaintiff's showing an unreasonable delay, the duty devolved upon the defendant to establish by a preponderance of the evidence that such delay was not due to negligence on the part of the telephone company. The petition, however, in that case alleged specific negligence, and it was held that the defendant was not called upon to meet any charge of negligence except that averred, and the inquiry there was therefore limited to the negligence charged. The court held that the evidence adduced in that case amounted to nothing more than a basis for speculation. In discussing whether the evidence showed that the proximate cause of plaintiff's loss was the unreasonable delay, the court said:

"The fire was the primary cause of the loss. The defendant did not start it, or have ought to do with its origin. The charge against it is that the negligence intervened as the efficient cause in the omission to do that which would have resulted in the extinction of the fire. Of course, if the failure to put out the fire was the direct and natural consequence of the unreasonable delay in making the connection, then there could be no doubt as to defendant's liability. But several links in the chain of sequences are involved in doubt and speculation. The fire was burning not only before plaintiff reached the receiver, but before he was awakened by his wife, who had heard the crackling of flames. Conceding that he was at the telephone nine or ten minutes, though minutes seem hours at such times, and that connection was made at the central office within two minutes thereafter, yet, as the hose company had been notified by another, there could not have been a delay of more than ten or twelve minutes, and, when the firemen arrived, the fire was beyond control. At what time must they have been on the ground to have

saved the property? No one can answer save from conjecture. All realize that in such emergencies time is precious, but who can say from the situation as presented in this case how many minutes meant the loss of the plaintiff's property? Suppose the connection at the central office had been made promptly, would the firemen in charge of the fire station have responded promptly and promptly have rung the fire bell? Would the members of the department have heard and promptly have repaired to the scene? Was the apparatus for extinguishing the fire in working order and the water supply accessible and sufficient? Would all of these intervening agencies have operated harmoniously and efficiently and with such promptness as to have put out the flames in time to have avoided a total loss? Manifestly these are matters of speculation, and yet all this must be assumed if the loss is to be traced to defendant's negligence. Each of these independent agencies necessarily must be linked together in a line of causation in order to connect it with the loss. None of them were under the direction or control of the telephone company. Moreover, how far the fire had spread at the time the firemen would have been likely to have reached the scene had the connection been promptly made is left by the evidence a matter of speculation merely. And then there are the weather conditions and the character of the material to be taken into account. After the experience of ages, fighting fire, even with modern machinery and apparatus, is precarious business, and uncertain in its results. Had everything worked out as calculated after the fire was over probably some of the building and machinery might have been saved. But the basis for a legal inference of this kind was not furnished by the evidence. The negligence of the telephone company may be ascertained, but that falls short of connecting it with the loss which is only possible through agencies entirely independent. If it, as the dominating force, acted through the intervening agencies, as mere instruments or vehicles in a natural line of causation, to the loss, there would be ground for saying defendant was liable. But the intervening agencies were independent, and what might have happened pure matter of speculation."

In *Providence Washington Ins. Co. v. Iowa Telephone Co., supra,* it was held that damages asserted to have been

caused by the failure of a telephone company promptly to furnish connection must be reasonably certain both as to their amount and the cause from which they proceed in order to be recoverable. The fire involved in that case was caused by the igniting of a considerable quantity of gasoline which had been spilled upon a wooden floor in a barn while the plaintiff was engaged in filling the tank of his automobile, the automobile being surrounded at the time by crates and boxes containing excelsior and other highly inflammable materials. The court held that the evidence as to damages and proximate cause did not go beyond mere speculation. A reading of the recited evidence in that case strongly tends to support the conclusion reached.

In *Cody v. New York Telephone Co.* 3 N. J. Misc. 1176, 131 Atl. 221, it was held under the facts adduced that whether the damages would have been less if the telephone company had made a prompt connection was so speculative as to permit no recovery.

While the burden resting upon a plaintiff in a case like the present must ever be a heavy one, it certainly is not one that never can be met. If that were so, the statute which permits a recovery of all damages occasioned by the refusal or unreasonable delay of a telephone company to furnish a connection would amount to nothing in cases like the present. The Iowa court did not hold that recovery for refused or delayed telephone service could never be had in a fire case. Quite the contrary conclusion is justified by the language of the opinion.

In our opinion, the views expressed by the Missouri and Kentucky courts should not be approved by us, especially in view of the statute which the legislature in its wisdom has seen fit to enact. Granting an unreasonable delay in furnishing a connection or a wholly unjustified refusal to furnish any connection at all to a subscriber in good standing, the question as to what damages were caused thereby is a question of fact to be determined by the jury and upheld by the

court, if within the field of reasonable inferences and not in that of speculation and conjecture. The evidence in this case reasonably permits of the inferences that had the defendant promptly furnished the requested connection with the residence of the assistant fire chief he would have learned of the fire that threatened the plaintiff's mill; that he would have promptly contacted the president of the village whose whereabouts was known to him and informed him of the request that the Bowler fire department be sent out to the mill; that the president would have consented to the request; that the fire alarm would have been promptly sounded by Kriewaldt, who resided just across the road from the fire station; that a sufficient crew to man the truck and the fire-fighting apparatus would have been quickly mustered under the conditions which existed in that little village; that the county trunk highway connecting Bowler with the mill was in good condition; that the truck and apparatus were in good condition; that the supply of water immediately adjacent to the mill was unlimited in quantity, and that the apparatus was capable of throwing a sufficient amount of water to effectively check the fire which at the time the crew and apparatus would have arrived, had the connection been given, was, so far as the mill itself was concerned, still confined to the roof thereof. The facts that when the request finally reached the president by messenger he promptly consented to the fire apparatus being taken; that a crew was assembled and the apparatus was taken out to the mill where it operated efficiently, takes out of the realm of speculation much that might otherwise be so considered. All that the plaintiff's evidence tended to prove would have occurred had the connection been given at 9:20, did occur an hour and a half later when the request was given to the president. Under the evidence adduced in this case, we cannot say that the findings of the jury were based only upon speculation or conjecture, or that the damages

found are so remote and speculative as to amount to a failure of proof. Much of the plaintiff's damages consisted of destroyed and damaged machinery. The inference is reasonably permissible that much of the machinery was not seriously, if at all, damaged until the whole mill was on fire and much of it destroyed.

The defendant further contends that the court erred to its prejudice in permitting several witnesses to express their opinion regarding the length of time it would have taken the Bowler fire department to check, control, and extinguish the fire, as they themselves had observed it to be, at 9:30 and at 9:45. Most of the witnesses who ventured such opinions had had some experience as fire wardens or in fighting fires. While the witnesses, other than those connected with the Bowler fire department, were not in our opinion competent to testify as experts and should not have been permitted to express their opinions, the error was not prejudicial, since the court pretty clearly evaluated such testimony when objection was made to it by saying "It really isn't of much value, but you may answer," and again by saying, in connection with another witness, "It is a matter of guess, that's all, but you may answer the question." All of the witnesses, whose testimony was incompetent, stated that, in their opinion, the damages to the mill proper would have been quite insignificant had the fire department reached the mill at 9:45 or a little thereafter. It is evident from the verdict that the jury did not give much consideration to such testimony, since the total damages sustained, according to the testimony, amounted to $2,600 to $3,000, and the jury found the damages which were occasioned by the refusal of the defendant to give a connection, to be $1,500.

The defendant further contends that certain telephone tickets produced by the defendant, which were made by the operator at Marion at the time the call for a connection with

Bowler came in, undisputably show that that call did not come in until 9:49, and that therefore the testimony of the witnesses who fixed the time of the call at about 9:20 was incredible. Assuming that the telephone tickets contained a correct statement as to the time the call came in, the plaintiff's case is not thereby destroyed, for it reasonably appears that immediately after the fire was discovered and while it was still confined to the pile of kiln wood near the boilerhouse the call was put in. The time fixed by the witnesses as 9:20 is therefore not controllingly important. There was a long delay thereafter before Hilliker, the fire warden, came to the fire and before he went to Bowler to contact the fire department. There are a number of discrepancies in the testimony as to the fixing of the time when certain events transpired, and also as to the lapse of time between such events, which no doubt arose because the witnesses did not consult their timepieces while engaged in attempting to put out the fire. It is our conclusion that the inferences of the jury were, under the facts of this case, reasonably permissible, and that no prejudicial error occurred upon the trial.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, without costs, on March 9, 1937.