Thomas R. Robinson, Jr. *v.* The Southern New England Telephone Company

Baldwin, Inglis, O'Sullivan, Quinlan and Wynne, Js.

Argued October 8—decided November 17, 1953

*Charles A. Watrous,* with whom were *Thomas R. Robinson* and *Chester T. Corse,* for the appellant (plaintiff).

*Morris Tyler,* with whom were *John F. Filer* and *John Lashnits,* for the appellee (defendant).

QUINLAN, J. This action was brought for breach of duty and negligence in failing to put through a telephone call for the plaintiff as requested by a neighbor and agent of the plaintiff and a subscriber of the defendant at Newtown. The jury returned a general verdict in favor of the plaintiff. The defendant made a motion to set aside the verdict and to render judgment in its favor in accordance with its motion for a directed verdict pursuant to Practice Book, § 234. The trial court granted the motion, and from the judgment rendered the plaintiff has appealed.

From the memorandum of decision, it appears that judgment for the defendant notwithstanding the verdict was rendered because, in the words of the trial judge, "several essential elements in the chain of causation have not been established and . . . there was no basis for a finding of causal connection between the plaintiff's damage and the defendant's default without resorting to speculation and conjecture." The question presented, then, is whether there was offered at the trial evidence upon which reasonable persons could have reached the conclusion that the plaintiff's damage was caused by the defendant's

breach of duty. Both parties ask that, in the event error is found, a new trial be granted.

There was evidence from which the jury could reasonably have found the following facts: Prior to April 18, 1948, the plaintiff owned a cottage on the shore of Lake Zoar in the town of Newtown. It was about two miles distant from the settlement of Riverside in the town of Oxford on the west end of the Stevenson dam where the Riverside fire department was located. The cottage was about eight miles from the Sandy Hook fire department located in the settlement of Sandy Hook in the town of Newtown, and about ten miles from the Newtown fire department in the center of Newtown. The equipment of the Riverside fire department consisted, in 1948, of a 1926 Hahn truck, upon which was mounted a power-driven pump, with a 100-gallon tank of water, "jet booster," hose and appurtenances. The truck was old but in running condition. The jet booster had never been used at a fire, required priming and would fail in its functioning if the least bit of grit got in the so-called "impeller." The Sandy Hook fire department had similar equipment, with a 180-gallon booster tank but no jet booster. The Newtown fire department had a modern truck with a 500-gallon tank and an auxiliary pump for obtaining water from streams or bodies of water.

On April 18, 1948, a fire broke out in the cellar of the plaintiff's house and spread through a hot air duct to the linen closet above. Having attempted unsuccessfully to extinguish the fire, the plaintiff sent his wife to a neighbor's house half a mile distant. The neighbor asked a Newtown telephone operator to connect her with the Riverside fire department. This request was refused, and, instead, the operator summoned the Sandy Hook and Newtown

fire departments. In the interval, the plaintiff, failing in his efforts to thwart the fire, closed the doors and windows in the house. The Newtown truck arrived at the scene fifteen or more minutes after the Sandy Hook equipment, which in turn did not arrive until fifteen minutes or more after the telephone call. At the time of the arrival of the Sandy Hook apparatus, the fire was mainly confined to the linen closet, but upon the failure of the Sandy Hook fire department to extinguish the fire it spread.

In considering the evidence upon which this statement of facts, as well as facts hereinafter referred to, is based, we must give the plaintiff "the benefit of that construction most favorable to [his] claims." *Bernardo* v. *Hoffman*, 109 Conn. 158, 159, 145 A. 884; *Hayes* v. *New York, N.H. & H.R. Co.*, 91 Conn. 301, 304, 99 A. 694; *Greenhill* v. *Connecticut Co.*, 92 Conn. 560, 562, 103 A. 646. The plaintiff's claim is that, if the defendant had completed the call to the Riverside fire department, it could have responded in time to extinguish the fire before substantial damage had been done.

Before analyzing the evidence bearing upon the elements of causation essential to sustain the plaintiff's cause of action, we shall consider briefly the law pertaining to this kind of action. It is to be noted that in some of the states where such actions have been brought statutes existed imposing certain responsibilities on telephone companies with reference to messages. They do not, however, alter the basic requirements of proof as to causation. Among the cases are the following: *Lebanon, Louisville & Lexington Telephone Co.* v. *Lanham Lumber Co.*, 131 Ky. 718, 115 S.W. 824, 21 L.R.A. (N.S.) 115 and note; *Volquardsen* v. *Iowa Telephone Co.*, 148 Iowa 77, 126 N.W. 928, 28 L.R.A. (N.S.) 554 and note;

*Providence Washington Ins. Co.* v. *Iowa Telephone Co.,* 172 Iowa 597, 154 N.W. 874; *Southwestern Telegraph & Telephone Co.* v. *Thomas,* 185 S.W. 396 (Tex. Civ. App.); *Forgey* v. *Macon Telephone Co.,* 291 Mo. 539, 237 S.W. 792. The defendant prevailed in all these cases on the ground which governed the instant case, viz., the damage sustained was too remote from the neglect of the telephone company and the causal relationship between the two too conjectural. In the more recent case of *Boldig* v. *Urban Telephone Co.,* 224 Wis. 93, 271 N.W. 88 (1937), judgment was for the plaintiff upon a more favorable state of facts.

The facts on causation in the case at bar indicated an out-of-town exchange with a four-party line to reach the Riverside fire department; an absence of evidence as to whether the line was busy; no evidence as to the presence of the truck at the fire station; no evidence as to its running condition on that day as distinguished from its operating effectiveness; no evidence that a crew could be mustered; no evidence as to whether anyone other than William Beardsley would go without permission, if Beardsley was not available; no evidence that the fire commissioner from whom permission had to be obtained could be reached; no evidence that the commissioner would grant permission; no evidence that 100 gallons of water would extinguish the fire; evidence that the jet booster had never been used at a fire; no evidence that it could be started before the 100 gallons of water was consumed in priming; no evidence as to the time required to start it and that it would not exceed the time of the Sandy Hook fire department; no evidence as to the condition of the fire at the time the call was put in or as to how far the fire had spread when the Sandy Hook company arrived; no definite

evidence as to the status of the Riverside company at the time of the fire—whether it was town-governed or a purely volunteer organization; no evidence as to whether an agreement under § 679 of the General Statutes for the use of equipment in another town existed; and no evidence as to the physical condition of the roadway from the Riverside fire department to the fire.

William Beardsley of the Riverside fire department on April 18, 1948, was the man to receive calls. He was summoned and used as a witness by the plaintiff. He had certain records with him, and if others were missing they were within the power of the plaintiff to produce. Some of the deficiencies in the evidence might have been supplied by him but they were not. After all, factors of time, including the actual running time of the Riverside fire department and the progress of the fire at the time of the telephone call and at the time of the arrival of the Sandy Hook fire department, are in a conjectural and speculative condition. It certainly is not a situation where a company demonstrated what it could accomplish in control or extinguishment upon arrival. The *Boldig* case, supra, is uniformly cited in the relatively few cases of this nature supporting a plaintiff's position. The cases are reviewed in *Foss* v. *Pacific Telephone & Telegraph Co.*, 26 Wash.2d 92, 173 P.2d 144, wherein the court remarked (p. 107) that the language of the *Boldig* case, supra, was "in opposition to the rules adopted by the overwhelming majority of courts."

There can be no denial that inferences may properly be drawn from circumstantial evidence. *Bradbury* v. *South Norwalk*, 80 Conn. 298, 301, 68 A. 321. A plaintiff, however, must remove the causal relationship from the area of speculation and establish facts

which afford a logical basis for the inferences claimed. *Morse* v. *Consolidated Ry. Co.*, 81 Conn. 395, 399, 71 A. 553. As we said in *LeBlanc* v. *Grillo*, 129 Conn. 378, 382, 28 A.2d 127, "The test of the validity of the jury's determination depends upon whether the evidence, fairly and impartially considered, would be likely to induce in the minds of twelve men of ordinary intelligence attentively considering it and using common-sense logic 'a reasonable belief that it is more probable than otherwise that the fact in issue is true.'" Upon the evidence in the present case, the jury could not reasonably have found that there was a causal relationship between the fault of the defendant and the damage sustained by the plaintiff.

Practice Book, § 234, set forth in the footnote,[1] allows a trial court under the circumstances referred to in the rule either to direct a judgment notwithstanding the verdict or to order a new trial. We are faced with the question in the present case whether the court erred in adopting the former alternative. It must be borne in mind that under the rule action

[1] "Sec. 234. RESERVATION OF DECISION ON MOTION FOR A DIRECTED VERDICT. Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. After the reception of a verdict and within the time stated in Sec. 233 for filing a motion to set a verdict aside, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party may move for judgment in accordance with his motion for a directed verdict within the aforesaid time after the jury has been discharged. If a verdict was returned the court may allow the judgment to stand or may set the verdict aside and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial."

upon the motion for a judgment notwithstanding the verdict is, in part, action upon the motion for a directed verdict which has been postponed. Accordingly, the first test to be applied to a court's action is the determination whether, upon the evidence in the case, a direction of a verdict in favor of the defendant would have been proper. Inasmuch as the evidence in the present case would not have permitted a verdict in favor of the plaintiff, the court would have been compelled to direct a verdict for the defendant. *Mott* v. *Hillman,* 133 Conn. 552, 555, 52 A.2d 861.

In cases in which it is determined that a directed verdict would have been proper, there is still a second test to be applied to the action of the court in directing judgment under the rule rather than ordering a new trial. That test is whether the court abused its discretion in so doing. The rule vests in the court a legal discretion in the matter. This discretion should be exercised in favor of an order for a new trial if circumstances for which a party is not at fault have resulted in his failure to present the evidence which is lacking in his case and it appears that the necessary evidence will in reasonable probability be available on a retrial. Typical circumstances which would justify the ordering of a new trial rather than the entry of judgment notwithstanding the verdict would be the unforeseen failure of a witness to appear or to testify as the party might reasonably have expected him to, or some erroneous ruling on the trial which excluded the essential evidence. In the present case, we cannot say that the trial court abused its discretion in ordering judgment rather than a new trial.

There is no error.

In this opinion the other judges concurred.