RODERICK MCDONALD, ADMINISTRATOR (ESTATE OF FREDERICK G. MCDONALD) *v.* THE CONNECTICUT COMPANY ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued May 10—decided July 18, 1963

*John C. Flanagan,* with whom was *Edward T. Falsey, Jr.,* for the appellant (plaintiff).

*Kevin T. Gormley,* with whom, on the brief, was *Martin E. Gormley,* for the appellees (defendants).

SHEA, J. The plaintiff brought this action to recover damages for the death of his decedent, alleged to have been caused by the negligence of the defendants. The plaintiff has appealed from a judgment rendered on a verdict which was directed for the defendants, assigning error in the denial of his motion to set aside the verdict.

In reviewing the ruling on the motion to set aside the verdict, we view the evidence in the light most favorable to the plaintiff. *Peters* v. *Billick,* 147 Conn. 699, 700, 166 A.2d 146. The jury could have found the following facts: Grand Avenue, a public highway in New Haven, runs generally in an easterly and westerly direction and is intersected by Olive Street, a public highway which runs generally in a northerly and southerly direction. Traffic control consists of a conventional overhead signal light which, when displaying a green signal for northbound and southbound traffic on Olive Street, is simultaneously displaying a red signal for eastbound and westbound traffic on Grand Avenue. There is a street light at the southwest corner of the intersection. On July 15, 1960, about 10 p.m., the defendant Roger A. Cruz, as the agent of the defendant Connecticut Company, was operating its bus northerly on Olive Street. The weather was clear, and the streets were dry. There was a bus stop on the easterly side of Olive Street south of Grand Avenue. The driver turned the bus toward the curb at the bus stop, saw no one waiting and,

observing that the traffic light was green for northbound traffic on Olive Street, continued on to the intersection, intending to make a right turn into Grand Avenue. As the bus reached the intersection, an ambulance traveling easterly on Grand Avenue crossed the intersection against the red light, causing the bus to stop. After the ambulance had gone through the intersection, the driver of the bus proceeded to make a right turn into Grand Avenue. As he was nearing the completion of his turn, he felt a bump as if it came from the rear wheels. He stopped the bus, got out and found the decedent lying under the bus three or four inches to the rear of the right rear wheels.

As the bus driver left the bus stop, he drove forward toward the intersection in such a way that the front end of the bus was near the middle of Olive Street, with the rear end closer to the curb. To execute the turn to the east on Grand Avenue, it was necessary to make a wide swing and go to the left or north of the white center line on Grand Avenue. While the bus was waiting for the ambulance to pass, the driver did not look in the direction of the bus stop on Olive Street, nor did he look in that direction as he started the right turn into Grand Avenue. As he made his turn, the driver looked to the front and to his right, watching for traffic and people on Grand Avenue. He did not see the decedent at any time before the accident. The front door of the bus was on the right side of the bus and had glass panels running almost the entire length of the door. There were windows all around the bus, and the inside and outside lights were on at the time. An overhead inside mirror permitted the driver to see outside to the right of the bus.

A short time before the accident, the decedent

had stopped at a firehouse about one block south of the site of the accident. At the firehouse, it was evident that he had been drinking, but he was not drunk. He did not stagger, and his speech was fairly clear. The decedent stated that he had to catch a bus and was told where there was a bus stop. He was next seen running from the east sidewalk of Olive Street into Grand Avenue toward the bus. As he ran into the street, he followed after the bus in the direction in which it was going. He came into contact with the bus just behind the front door about five feet back from the front of the bus, which was moving slowly at the time. After striking the bus, he fell to the pavement. The bus continued its turn, and its rear wheels ran over him. He was within the lines of the crosswalk on Grand Avenue when he came in contact with the bus. He sustained serious injuries and was taken to the Grace-New Haven Community Hospital. While in the hospital, he told a police officer that he had been drinking beer on the day of the accident from around noon until 10 p.m. and that he remembered walking down Olive Street, intending to catch the last Grand Avenue bus. He died fourteen days after the accident.

Although a directed verdict is not favored, it is justified if on the evidence the jury could not reasonably and legally reach any other conclusion than that embodied in the verdict as directed. *Bader* v. *United Orthodox Synagogue,* 148 Conn. 449, 455, 172 A.2d 192. The plaintiff claims that the operator of the bus failed to maintain a proper lookout. An operator of a motor vehicle is chargeable with notice of dangers of whose existence he could become aware by a reasonable exercise of his faculties. *Palombizio* v. *Murphy,* 146 Conn. 352, 357,

150 A.2d 825. He is also bound to a higher degree of care in the case of a pedestrian on a crosswalk, since the operator should expect pedestrians to be there. *Fandiller* v. *Peluso,* 139 Conn. 225, 228, 92 A.2d 734. If the pedestrian is not on the crosswalk, the test is whether he is so near to it that the motorist should anticipate his presence. *Degnan* v. *Olson,* 136 Conn. 171, 175, 69 A.2d 642. Here, there was no evidence to show that the decedent was on or near the crosswalk when the bus driver began to make his turn into Grand Avenue. According to the statement the decedent gave the police officer, the decedent intended to catch the last bus. An eyewitness to the accident testified that the decedent ran into the street at a fast pace, following the bus in the direction in which it was moving. Apparently, the decedent was attempting to overtake the moving bus in the hope that he would be able to board it. The bus driver's seat was directly opposite the front door. The decedent collided with the bus to the right, and in back, of the driver when the bus was nearing the completion of its turn. The decedent was wearing dark clothing. Under these circumstances, the driver could not be charged with negligence in failing to observe the decedent before the accident. The evidence does not support the plaintiff's contention that the driver failed to keep a proper lookout.

The plaintiff also claims that the driver violated General Statutes § 14-300, which gives to a pedestrian on a crosswalk the right of way over all vehicles. The statute gives the right of way to a pedestrian "started or starting" across the highway. When the accident occurred, the bus had nearly completed its turn. There was no evidence to show that the decedent was at or near the cross-

walk until immediately before the accident, when he ran into the street toward the bus. Under the circumstances, the decedent was not entitled to claim the benefit of the right of way provision of the statute. The plaintiff also claims that the driver was operating the bus in violation of certain statutes which relate to turns and the movement of vehicles on a highway. See §§ 14-241, 14-242, 14-243. There is no evidence to support the claim that the violation of any of these statutes, if there was such a violation, caused or contributed in any way to the injuries and resulting death of the plaintiff.

The court did not err in directing the jury to return a verdict for the defendants. *Robinson* v. *Southern New England Telephone Co.,* 140 Conn. 414, 420, 101 A.2d 491; *Peters* v. *Billick,* 147 Conn. 699, 702, 166 A.2d 146.

There is no error.

In this opinion BALDWIN, C. J., and MURPHY, J., concurred.

ALCORN, J. (dissenting). I cannot agree. The majority reaches its result by a particular interpretation of the evidence. The result would be correct if the interpretation was the only reasonable one. Our responsibility is to protect this plaintiff's substantive right to have the evidence interpreted by a jury if the evidence is reasonably susceptible to more than one interpretation. We are not reviewing an exercise of discretion by the trial court. The sole question is whether evidence was offered from which a reasonable difference of opinion could exist as to the issue of liability. I believe that the case contains such evidence.

The jury were entitled to believe the bus driver's statement, "As I started my turn from Olive Street

into Grand Avenue, I never looked again to my right" and were not required to adopt the interpretation, which the majority puts on this and other portions of his testimony, to the effect that he did look. The jury were not required to interpret the obscure language of one witness, as the majority does, to mean that the decedent was running to overtake the bus from behind. The jury could reasonably have found that the decedent left the south curb of Grand Avenue within the marked crosswalk and with the traffic light in his favor and that he began to run, but had gone not more than fourteen feet when the contact with the bus occurred, inches in back of the glass-paneled door opposite the driver. From this evidence, the jury could reasonably have found either that the driver did not look at all or that he looked but failed to see the decedent. From either finding, the jury could have concluded that the driver was negligent, that as a result the bus, making a wide arc, struck the decedent a sideswiping blow, and that the rear wheels passed over the decedent's body, which was still within the crosswalk. The majority concludes that the bus driver was not negligent. That is not the only reasonable conclusion on a permissible interpretation of the evidence. Whether he was negligent and, if he was, whether the decedent was contributorily negligent, remained questions for the jury.

In this opinion KING, J., concurred.