[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE MOTION TO SET ASIDE; MOTION FOR REMITTUR; MOTION TO ARREST THE JUDGMENT OR TO SET ASIDE THE VERDICT AS TO DAMAGES; AND MOTION FOR ADDITUR
The plaintiff, Sheila Robinson and the defendants John Ratcliffe and Karen Ratcliffe have filed various motions addressed to the verdict accepted by the Court on December 20, 1990 after a trial by jury. The plaintiff sustained permanent injury to both lower extremities on July 22, 1987 when she tripped on the defendants' residential property located at 16 Indian Ridge in the Town of New Milford and fell or jumped off a six foot wall to an asphalt driveway.
The issue of damages was governed by General Statute Section 52-572h, that I, and therefore the jury was required to consider four categories of damages. Initially, the jury made an award only for past economic damages, in the amount of $28,365.74, but after being recharged returned a verdict of $5,000.00 for past non-economic damages for a total verdict of $33,365.74, reduced by 49% for plaintiff's negligence for a net verdict of $17,016.03.
 DEFENDANT'S MOTION PER JUDGMENT NOTWITHSTANDING THE VERDICT
On December 19, 1990 the defendants filed a motion for a directed verdict on the grounds that there was no evidence to indicate how or why the plaintiff fell over or from the wall on the defendants' property. After argument, the court reserved decision on this motion.
On the date of the accident, Mrs. Robinson was a social invitee at the defendants' residence assisting Mrs. Ratcliffe in the preparation for a social event. She offered to fill a swimming pool located toward the rear of the property at the end of the asphalt driveway. The driveway sloped downward from the street and the front yard was buttressed by a retaining wall ranging from about three feet to six feet. The plaintiff exited the front door of the residence, removed a garden hose and proceeded in broad daylight at about 6:00 p.m. toward the wall with the intention of draping it over the wall and then to walk down around the driveway. A kink developed in the hose as she walked and while straightening the hose she tripped, causing her to go over the wall.
The plaintiff claimed that the defendants were negligent in that they had knowledge of the dangerous condition in the front yard of their premises created by said retaining wall in that said retaining wall was raised approximately 5" to 10" above the front lawn creating a tripping hazard with a potential 5'8" fall to hard pavement; the defendants failed to correct or eliminate said CT Page 935 dangerous condition; the defendants failed to warn the plaintiff of said dangerous condition; the defendants failed to provide a railing or other means of support along said retaining wall when in the exercise of reasonable care they should have done so; and the defendants failed to provide safe access between the defendants' front lawn and driveway.
Directed verdicts are not favored and may be granted only when the jury could not reasonably and legally reach another conclusion. Petyan v. Ellis, 200 Conn. 243, 244. In acting upon a motion for a directed verdict or a motion for judgment notwithstanding the verdict, the court must view the evidence in the light most favorable to the plaintiff, State v. Tippetts-Abbett-McCarthy-Stratton, 204 Conn. 177, 183. As stated in Boehm v. Kish, 201 Conn. 385, at 389:
 A directed verdict is justified if on the evidence the jury could not reasonably and legally reach any other conclusion than that embodied in the verdict as directed; id.; McDonald v. Connecticut Co., 151 Conn. 14, 17 193 A.2d 490 (1963); or if the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party. Mott v. Hillman, 133 Conn. 552, 555, 52 A.2d 861
(1947). Although the elements of a cause of action may be established on the basis of inferences drawn from circumstantial evidence; see, e.g., Cayer v. Salvatore, 150 Conn. 361, 363, 189 A.2d 505 (1963); such inferences must be reasonable and logical, and the conclusions based on them must not be the result of speculation and conjecture. Palmieri v. Macero 146 Conn. 705, 708, 155 A.2d 750 (1959). An inference must have some definite basis in the facts. See Latham v. Hankey, 117 Conn. 5, 10-11, 166 A. 400 (1933). When an element necessary to a cause of action cannot be established without conjecture, the evidence presented cannot withstand a motion for a directed verdict.
Applying these principles to the instant case, the Court finds that the motion for judgment N.O.V. should be granted. No evidence was introduced that the retaining wall on the defendants' property was in violation of any state or municipal building code, statute or constituted a dangerous condition. The court charged the jury that "the definition of dangerous is: attended or beset with danger; full of risk; perilous, unsafe; hazardous; and that the definition of condition is: attendant circumstances; existing state of affairs; a mode or state of being." CT Page 936
The owner of property has no duty to a social/business invitee to warn that individual of a dangerous condition until the property owner has actual or constructive knowledge of the dangerous condition. Neither defendant had any knowledge of the existence of any dangerous condition on their property and therefore had no duty to warn Sheila Robinson to be careful of the wall. Hennessy v. Hennessy, 145 Conn. 211. Furthermore, the clear and lengthy testimony of the plaintiff, was that she knew that the wall separated the driveway from the front yard, she knew that she had to drape the hose over the wall near the house and that there was no access to the driveway from that point on the wall, and that while looking towards the wall from the front yard she could not see her car which she testified she had parked at the juncture of the wall with the house/garage. The defendants had no obligations to protect Mrs. Robinson from something she was well aware of and could see with her own eyes. The failure to warn an invitee of something he already knows is without legal significance. Warren v. Stancliff, 157 Conn. 216 (1968).
 B
The plaintiff produced no evidence or testimony with respect to the design, construction, safety, or regulation of retaining walls such as that located on the property of John and Karen Ratcliffe. The lack of a railing on the retaining wall was not shown to be in violation of any state or municipal building code or statute. The only direct testimony with respect to a railing on the retaining wall was that of the defendant, Karen Ratcliffe, who testified that she and her husband had at one time considered either installing steps in the retaining wall to provide easier, quicker access from the front yard of their house to the driveway and that they had also considered installing some sort of railing along the top of the wall.
 C
The defendant, Karen Ratcliffe, testified with respect to the method she used for filling the swimming pool. The plaintiff, Sheila Robinson, testified that her plan upon leaving the house by the front door and taking the hose off the holder on the foundation of the house was to drape the hose over the wall, walk across the front yard to the street end of the driveway, go down the driveway, pick up the hose, and complete the job. This is substantially the same method employed by Mrs. Ratcliffe.
The testimony of Mrs. Robinson on December 19, 1990 confirms her knowledge of the area, wall an necessity of reaching the pool by walking down the driveway.
"DIRECT EXAMINATION BY MS. GRIFFIN: CT Page 937
Q Okay. Now, when you picked up the hose and you started across here, what did you plan to do? Where were you going?
A I was going to go, I guess, to the end of the wall, I really don't remember, and drape it over, go over to the end and walk around.
Q So you were going to take the hose across here?
A Right.
Q And drape it over the wall?
A Yes.
Q So you knew the wall was there, you knew there were no stairs?
A I knew the wall was there when I drove in the driveway. You can see the wall.
Q You knew it was high enough so that you would have to drape the hose over?
A Yes, because you can't help but not see it when you drive in the driveway. But how high it was, I really couldn't tell you by driving in because I don't pay much attention to those things.
Q Okay. So that you said you were going to walk across pulling the hose and then feed the hose over the wall?
A No, just going to throw it over.
Q Throw it over the wall. What was your plan?
A To walk down to — no, all the way down to the end.
Q All the way up to the street?
A Yes.
Q Then around the end of the stone wall?
A Yes.
Q And back down and then pick it up and drag it over to the pool? CT Page 938
A Right."
The numerous photographs introduced into evidence by the plaintiff and the defendants clearly depict a front yard that is essentially level and free from any physical or visual barriers or obstructions between the house and the street. The junction of the driveway with the street is clearly visible from the front yard and the distance from the street to the Ratcliffe house proper is clearly not significant enough to prevent entrance and exit from the front door to the street and from the street to the front door. Again, the plaintiff failed to produce any evidence or testimony that the topography, layout, or design of the Ratcliffe front yard and driveway were in any way in violation of any state or municipal building code or statute.
 D
The court has reviewed the testimony of the plaintiff concerning liability and can find nothing to sustain a verdict for the plaintiff. Appendix A. She testified that she tripped on something and lost her balance but does not know what caused it. It was not the wall itself, however.
It is apparent that the jury's verdict was based primarily on sympathy for a woman who presented a favorable appearance and had been seriously injured. Such a verdict on that basis alone cannot stand. Malmberg v. Lopez, 12 Conn. App. 438, 447. The jury awarded the plaintiff $33,365.74 reduced by 49% comparative negligence to $17,016.53 but refused initially to award any money for pain and suffering. There was no factual dispute as to the injuries or the special damages. The jury advised the court that it had "considered past non-economic damages and decided not to award anything" and asked the court, "must we give a monetary value". It is apparent that the jury wanted to give the plaintiff a small award, but was unwilling to follow the court's instructions concerning damages.
The court finds that reviewing the evidence in the light most favorable to sustaining the verdict, it is contrary to the law and the evidence and must therefore be set aside. For the reasons stated, the defendants' motion for judgment notwithstanding the verdict is granted.
 II PLAINTIFF'S MOTION TO ARREST THE JUDGMENT OR TO SET ASIDE THE VERDICT AS TO DAMAGES
While the court has granted the defendants' motion for judgment notwithstanding the verdict, it will determine the CT Page 939 plaintiff's motion concerning damages in the event of appellate consideration.
As a result of her fall, Mrs. Robinson claimed to have sustained permanent injuries including a severely depressed, compressed and displaced fracture of the right calcaneus (heel bone); a severely depressed, compressed and displaced fracture of the left calcaneus (heel bone); and abrasion of the right knee.
The court finds that the verdict was inadequate as a matter of law in that the jury awarded the sum of five thousand ($5,000.00) dollars for past non-economic damages and zero dollars for future non-economic damages. The unimpeached and uncontradicted testimony at trial was that as a result of the subject accident the plaintiff had suffered severely depressed, displaced and comminuted fractures of both heels which required surgical reconstruction and the insertion of two steel Steinmann rods through each heel and totally incapacitated the plaintiff so that she was confined to bed or to a wheelchair for approximately five months. She was incapacitated from returning to work for nine and a half months. She also suffered a long and painful period of rehabilitation, further complications of the injury to the left foot which required further surgery and continued pain, swelling and disability of both feet from July 22, 1987 up to the time of trial. With respect to future pain and suffering, Dr. Orlandi, the treating orthopedist, testified that as a matter of probability Mrs. Robinson suffered a ten percent disability of her left foot and a five percent disability of her right foot and that the pain, swelling and limp which she now suffers will be permanent. Mrs. Robinson's life expectancy from the life expectancy tables is 28.6 years. Dr. Orlandi also testified as a matter of probability that Mrs. Robinson would suffer post-traumatic arthritis in the heels in the future. None of this testimony was impeached or contradicted by the defendant.
The size of the award for the past non-economic damages from July 22, 1987, the date of the accident, through December 20, 1990, when the verdict was rendered, is shocking to the sense of justice. Similarly, the failure of the jury to grant any amount for future non-economic damages in the face of the unimpeached and uncontradicted testimony of Dr. Orlandi as to Mrs. Robinson's permanent disability and pain through her 28.6 year life expectancy and the probability of the onset of post-traumatic arthritis in subsequent years so shocks the sense of justice as to compel the conclusion that the jury failed to follow the court's charge on damages under Connecticut General Statutes Section 52-572h.
It is "the court's duty to set aside the verdict if its manifest injustice was so plain and palpable as to justify the CT Page 940 suspicion that the jury or some of its members were influenced by prejudice, corruption or partiality." Burr v. Harty, 75 Conn. 127,129; State v. Avcollie, 178 Conn. 450.
In view of the inadequacy of the verdict, a new trial is required. The defendant's liability is not clear. "The issues of damages and liability are so interwoven that, in fairness a new trial is mandated as to both issues." Fazio v. Brown, 209 Conn. 450,456; Malmberg v. Lopez, 108 Conn. 675. The plaintiff was found to be substantially contributorily negligent and therefore issues of damages and liability are "inextricably interwoven".
For the reasons stated, in the event that for whatever reason a judgment notwithstanding the verdict is not final, a new trial on the issues of liability and damages is ordered.
 III
In view of the decision of the court on the foregoing motions, the plaintiff's motion for additur and the defendants' motion for remittitur are denied.
PICKETT, J.